## KRICHMAN *v.* UNITED STATES.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 260.   Argued March 23, 1921.—Decided May 16, 1921.

A baggage porter employed in a station of a railroad controlled and operated by the United States under the railroad control legislation during the late War, was not a "person acting for or on behalf of the United States in any official function," within the intendment of § 39 of the Criminal Code concerning briberies. P. 365.

263 Fed. Rep. 538, reversed.

CERTIORARI to review a judgment of the Circuit Court of Appeals affirming a judgment of the District Court on a conviction under an indictment. The facts are stated in the opinion.

*Mr. Edward Schoen* for petitioner.

*Mr. W. C. Herron,* with whom *Mr. Assistant Attorney General Stewart* was on the brief, for the United States.

MR. JUSTICE DAY delivered the opinion of the court.

Krichman, petitioner, was convicted upon an indictment which charged that, while the Pennsylvania Railroad was under the control of and being operated by the

United States, he offered a bribe to a baggage porter
to do an act in violation of his duty, contrary to § 39
of the Criminal Code of the United States; 35 Stat.
1096; 10 Comp. Stats. § 10,203. The section is in the
margin.[1]

It appears that the porter was employed at the Pennsyl-
vania terminal in the City of New York. The petitioner
offered to bribe the porter to deliver to him certain trunks
containing furs, which were checked from the Pennsyl-
vania station to points outside the State of New York,
and paid the porter a sum of money, and procured from
him delivery of a trunk containing valuable furs.

Petitioner moved in arrest of judgment, claiming that
neither the indictment nor the evidence made out any
offense under the statute. The District Court denied the
motion. 256 Fed. Rep. 974. The judgment was affirmed
by the Circuit Court of Appeals for the Second Circuit.

---

[1] Section 39 is as follows:

"Whoever shall promise, offer, or give, or cause or procure to be
promised, offered, or given, any money or other thing of value, or shall
make or tender any contract, undertaking, obligation, gratuity, or
security for the payment of money, or for the delivery or conveyance
of anything of value, to any officer of the United States, or to any
person acting for or on behalf of the United States in any official
function, under or by authority of any department or office of the
Government thereof, or to any officer or person acting for or on behalf
of either House of Congress, or of any committee of either House, or
both Houses thereof, with intent to influence his decision or action on
any question, matter, cause, or proceeding which may at any time be
pending, or which may by law be brought before him in his official
capacity, or in his place of trust or profit, or with intent to influence
him to commit or aid in committing, or to collude in, or allow, any
fraud, or make opportunity for the commission of any fraud, on the
United States, or to induce him to do or omit to do any act in violation
of his lawful duty, shall be fined not more than three times the amount
of money or value of the thing so offered, promised, given, made, or
tendered, or caused or procured to be so offered, promised, given,
made, or tendered, and imprisoned not more than three years."

263 Fed. Rep. 538. The case then came to this court by writ of certiorari.

The statutes and executive orders concerning railroads are stated in *Northern Pacific Ry. Co.* v. *North Dakota*, 250 U. S. 135. By the statute of August 29, 1916, § 1, c. 418, 39 Stat. 645, the President was given power to take possession and assume control of the transportation systems of the country. After the declarations of war with Germany (April 6, 1917) and Austria (December 7, 1917), the President issued a proclamation of December 26, 1917, taking possession of the transportation systems within the boundaries of the United States. 40 Stat. 1733; Comp. Stats. 1918, § 1974a. The proclamation appointed a Director General of Railroads with full authority to take control of the systems, and to operate and administer them. (See Act of March 21, 1918, c. 25, 40 Stat. 451, for the full authority given the Director General by the proclamation of the President of March 29, 1918. Comp. Stats., 1918, § 3115³/₄ H.)

In order to sustain the conviction the bribe must have been given to an officer of the United States, or to a person acting for or on behalf of the United States in an official function under or by the authority of a department or office of the Government.

Clearly, Krichman was not an officer of the United States. *United States* v. *Maurice*, 26 Fed. Cas. No. 15747; *United States* v. *Hartwell*, 6 Wall. 385, 393. We need not dwell upon this point, as the Government concedes that the porter was not an officer within the meaning of the statute.

The point to be decided depends upon whether when the bribe was offered to the porter, he was acting for the United States in an official function. The decided cases do not afford much aid in reaching a solution of this problem, and in our view the cases cited in the opinions in the courts below throw little light upon the subject.

The statute creating the offense was passed long before there was any thought of the Government taking over the railroads. That does not prevent its application if the thing done offends against it. It is, however, a circumstance proper to be considered in determining whether the situation is one intended to be dealt with by Congress.

The act aims to punish the attempted bribery or bribery of officials and those exercising official functions under or by the authority of a department or office of the Government. Not every person performing any service for the Government, however humble, is embraced within the terms of the statute. It includes those, not officers, who are performing duties of an official character. As was well suggested by Judge Ward in his dissenting opinion in the Circuit Court of Appeals, not every employee of the Government is covered by the act, but a limitation is made applying to those acting in official functions. And he added: "The construction adopted by the court gives these words no meaning. They might as well, or indeed better, have been omitted, because windowcleaners, scrubwomen, elevator boys, doorkeepers, pages—in short, any one employed by the United States to do anything— is included."

The Government admits that the construction contended for will include the employees suggested by Judge Ward. Indeed, the construction given by the courts below would bring within the statute every employee acting under the Director General in the operation of the railroads. We are unable to accept this construction of a criminal statute.

In *United States* v. *Strang*, decided at this term, 254 U. S. 491, this court held that the Emergency Fleet Corporation, organized by the Shipping Board, and authorized by the President to exercise a portion of the power granted to him under the Act of June 15, 1917, c. 29, 40 Stat. 182,

was a separate entity from the Government which owned all of its stock, and that an inspector of the Shipping Board was not an agent of the United States within the meaning of § 41 of the Criminal Code, Comp. Stats. § 10,205, making it an offense for any officer or agent of any corporation, etc., and any member or agent of any firm, or person directly or indirectly interested in the pecuniary profits or contracts of such corporation, etc., to be employed or to act as an officer or agent of the United States for the transaction of business with such corporation, etc. Subsequently the statute was amended so as to bring the United States Shipping Board Emergency Fleet Corporation within its terms as a governmental establishment, and, later, to make it an offense to defraud or to conspire to defraud any corporation in which the United States owned stock. So, in our view, if § 39 is to include every governmental employee, it must be amended by act of Congress.

It is true that in the emergencies of war the Government took over the operation of the railroads, and placed them under the control of the President, acting by his chosen Director General, who was given full authority to avail himself of the services of railroad officials, directors, employees, etc., with ample authority over all. But we cannot believe that this action brought every service, however remote from the exertion of official authority, into the exercise of an official function within the meaning of the statute. We are constrained to the conclusion that the construction given in the courts below, and insisted upon by the Government, practically recasts the statute from one embracing officials, and those discharging official functions, into one including every person discharging any sort of duty while the Government is in control of the work.

The Government admits that the statute is ambiguous. While criminal statutes are to be given a reasonable con-

struction, ambiguities are not to be solved so as to embrace offenses not clearly within the law. We are unable to remedy the uncertainties of this statute by attributing to Congress an intention to include a baggage porter with those who discharge official duties in the operation of a railroad controlled by an officer of the Government.

It follows that the judgment of the Circuit Court of Appeals must be

*Reversed.*