## UNITED STATES v. ZENITH RADIO CORPORATION et al.

(District Court N. D. Illinois, E. D. April 16, 1926.)

No. 14257.

**1. Telegraphs and telephones ⟝30—Statute regulating radio communication must control, if conflicting with license for operating radio station (Act Aug. 13, 1912, § 1 [Comp. St. § 10100]).**

If there is conflict between provision in license for operating radio station and regulations established by Act Aug. 13, 1912, c. 287, § 1 (Comp. St. § 10100), latter must control.

**2. Criminal law ⟝13—Ambiguity in statute regulating hours for radio stations will not be solved so as to embrace offenses not clearly within statute (Act Aug. 13, 1912, § 2 [Comp. St. § 10101]).**

Ambiguity in Act Aug. 13, 1912, § 2 (Comp. St. § 10101), relative to hours for operating radio station, will not be solved so as to embrace offenses not clearly within statute.

**3. Constitutional law ⟝48.**

Statute must be construed, if fairly possible, so as to avoid, not only conclusion that it is unconstitutional, but grave doubts on that score.

**4. Constitutional law ⟝60—Congress cannot delegate power to make law, but can make law delegating power to determine some fact on which law makes its own action depend.**

Congress cannot delegate its power to make law, but can make law delegating power to determine some facts or state of facts on which law makes or intends to make its own action depend.

**5. Statutes ⟝241(1).**

Statutes creating and defining crimes cannot be extended by intendment, and no act, however wrongful, can be punished under statute, unless clearly within its terms.

**6. Statutes ⟝194—Specific provision relating to particular subject governs as against general provisions, which, although standing alone, would be broad enough to include subject to which particular provision relates.**

Where act has specific provision relating to particular subject, such provision governs as against general provisions in act, although latter, standing alone, would be broad enough to include subject to which more particular provision relates.

**7. Telegraphs and telephones ⟝79—Statute regulating radio stations held not to cover violations of license by radio station covered by specific provisions of another regulation in same act (Act Aug. 13, 1912, §§ 1, 2 [Comp. St. §§ 10100, 10101]).**

Act of Aug. 13, 1912, §§ 1, 2 (Comp. St. §§ 10100, 10101), regulating radio stations, held not to cover violations of provisions of license granted to radio station for use of specified wave length at certain hours; such violations being expressly covered by other specific provision in same act.

**8. Statutes ⬅219.**

Administrative rulings cannot add to terms of an act of Congress and make conduct criminal which such laws leave untouched.

At Law. The Zenith Radio Corporation and others were charged with violation of Act Aug. 13, 1912, § 1. Finding for defendants.

John Elliott Byrne, Asst. U.'S. Atty., of Chicago, Ill.

Louis E. Hart and Irving Herriott, both of Chicago, Ill., for defendant.

WILKERSON, District Judge. The information charges violations of section 1 of the Act of August 13, 1912, c. 287 (37 Stat. 302 [Comp. St. § 10100]).

The first count alleges that on December 19, 1925, defendant Zenith Radio Corporation used and operated certain apparatus for radio communication, as a means of commercial intercourse among several states of the United States, to wit, from Mt. Prospect, Ill., to Seattle, Wash.; which apparatus was so used and operated not under and in accordance with a license such as described in the act; and that defendant McDonald aided, abetted, and procured the commission of the offense. The second, third, and fourth counts charge offenses on other dates in the same language as count 1.

The fifth, sixth, seventh, and eighth counts are the same as the first four counts, except that it is charged that the corporation "used and operated certain apparatus for radio communciation for the transmission of radiograms and signals, the effect of which then and there extended beyond the jurisdiction of the state in which the same were then and there made."

Section 1 of the act in question prohibits the use of apparatus for radio communication as a means of commercial intercourse among the several states, or with foreign nations, or upon any vessel of the United States engaged in interstate or foreign commerce, or for the transmission of radiograms or signals the effect of which extends beyond the jurisdiction of the state or territory in which the same are made, or where interference would be caused thereby with the receipt of messages or signals from beyond the jurisdiction of said state or territory, except under and in accordance with a license, revocable for cause, granted by the Secretary of Commerce upon application therefor. It is provided:

"Any person, company, or corporation that shall use or operate any apparatus for radio communication in violation of this sec-tion, or knowingly aid or abet another person, company, or corporation in so doing, shall be deemed guilty of a misdemeanor. * * * *"

Section 2 of the act (Comp. St. § 10101) provides:

"Every such license shall be in such form as the Secretary of Commerce (and Labor) shall determine and shall contain the restrictions, pursuant to this act, on and subject to which the license is granted; every such license shall be issued only to citizens of the United States or Porto Rico or to a company incorporated under the laws of some state or territory or of the United States or Porto Rico, and shall specify the ownership and location of the station in which said apparatus shall be used and other particulars for its identification and to enable its range to be estimated; shall state the purpose of the station, and, in case of a station in actual operation at the date of passage of this act, shall contain the statement that satisfactory proof has been furnished that it was actually operating on the above-mentioned date; shall state the wave length or the wave lengths authorized for use by the station for the prevention of interference and the hours for which the station is licensed for work; and shall not be construed to authorize the use of any apparatus for radio communication in any other station than that specified. Every such license shall be subject to the regulations contained herein and such regulations as may be established from time to time by authority of this act or subsequent acts and treaties of the United States. Every such license shall provide that the President of the United States in time of war or public peril or disaster may cause the closing of any station for radio communication and the removal therefrom of all radio apparatus, or may authorize the use or control of any such station or apparatus by any department of the government, upon just compensation to the owners."

Section 4 of the act (Comp. St. § 10103) provides:

"For the purpose of preventing or minimizing interference with communication between stations in which such apparatus is operated, to facilitate radio communication, and to further the prompt receipt of distress signals, said private and commercial stations shall be subject to the regulations of the section. These regulations shall be enforced by the Secretary of Commerce (and Labor) through the collectors of customs and other officers of the government as other regulations herein provided for.

"The Secretary of Commerce (and La-

bor) may, in his discretion, waive the provisions of any or all of these regulations when no interference of the character above mentioned can ensue."

Among the regulations prescribed in section 4 are the following:

### "Normal Wave Length.

"First. Every station shall be required to designate a certain definite wave length as the normal sending and receiving wave length of the station. This wave length shall not exceed six hundred meters or it shall exceed one thousand six hundred meters. Every coastal station open to general public service shall at all times be ready to receive messages of such wave lengths as are required by the Berlin convention. Every ship station, except as hereinafter provided, and every coast station open to general public service shall be prepared to use two sending wave lengths, one of three hundred meters and one of six hundred meters, as required by the international convention in force: Provided, that the Secretary of Commerce (and Labor) may, in his discretion, change the limit of wave length reservation made by regulations first and second to accord with any international agreement to which the United States is a party.

### "Other Wave Lengths.

"Second. In addition to the normal sending wave length all stations, except as provided hereinafter in these regulations, may use other sending wave lengths: Provided, that they do not exceed six hundred meters or that they do not exceed one thousand six hundred meters: Provided further, that the character of the waves emitted conforms to the requirements of regulations third and fourth following. * * *

### "Division of Time.

"Twelfth. At important seaports and at all other places where naval or military and private or commercial shore stations operate in such close proximity that interference with the work of naval and military stations cannot be avoided by the enforcement of the regulations contained in the foregoing regulations concerning wave lengths and character of signals emitted, such private or commercial shore stations as do interfere with the reception of signals by the naval and military stations concerned shall not use their transmitters during the first fifteen minutes of each hour, local standard time. The Secretary of Commerce (and Labor) may, on the recommendation of the department concerned, designate the station or stations which may be required to observe this division of time. * * *

### "General Restrictions on Private Stations.

"Fifteenth. No private or commercial station not engaged in the transaction of bona fide commercial business by radio communication or in experimentation in connection with the development and manufacture of radio apparatus for commercial purposes shall use a transmitting wave length exceeding two hundred meters, or a transformer input exceeding one kilowatt, except by special authority of the Secretary of Commerce (and Labor) contained in the license of the station: Provided, that the owner or operator of a station of the character mentioned in this regulation shall not be liable for a violation of the requirements of the third or fourth regulations to the penalties of one hundred dollars or twenty-five dollars, respectively, provided in this section unless the person maintaining or operating such station shall have been notified in writing that the said transmitter has been found, upon tests conducted by the government, to be so adjusted as to violate the said third and fourth regulations, and opportunity has been given to said owner or operator to adjust said transmitter in conformity with said regulations. * * *

### "Penalties.

"For violation of any of these regulations, subject to which a license under sections one and two of this act may be issued, the owner of the apparatus shall be liable to a penalty of one hundred dollars, which may be reduced or remitted by the Secretary of Commerce (and Labor), and for repeated violations of any of such regulations, the license may be revoked.

"For violation of any of these regulations, except as provided in regulation nineteenth, subject to which a license under section three of this act may be issued, the operator shall be subject to a penalty of twenty-five dollars, which may be reduced or remitted by the Secretary of Commerce (and Labor), and for repeated violations of any such regulations, the license shall be suspended or revoked."

The Secretary of Commerce granted a license on September 21, 1925, to defendant corporation, and that license was in effect at the times of the alleged offenses charged in the information. A copy of the license is hereto appended.[1]

Among the provisions of the license, the following are to be noted particularly:

---

[1] See end of case.

"This station to be operated only on Thursday nights from 10 to 12 p. m., Central Standard time, and then only when the use of this period is not desired by the General Electric Company's Denver station. This license is also issued conditionally upon the avoidance of interference with other stations."

"In view of special conditions the station is authorized to use for communication exclusively with stations licensed by the United States the following additional wave lengths under 600 or over 1,600 meters: Meters, 332.4."

The material facts are not in dispute. It is agreed that defendant corporation, on the dates charged in the information, operated its station on a wave length and at times which were not authorized.

The broad provisions of section 1 of the act prohibit the use of the radio apparatus except *under and in accordance* with a license granted by the Secretary of Commerce. The use of the apparatus in violation of this provision is made a misdemeanor, punishable by fine up to $500 and forfeiture of the apparatus.

Section 2 of the act provides that the license shall contain the restrictions, *pursuant to the act*, on and subject to which the license is granted. It is provided in section 2 that the license "shall state the wave length or the wave lengths authorized for use by the station for the prevention of interference and the hours for which the station is licensed for work." It is further provided: "Every such license shall be subject to the regulations contained herein and such regulations as may be established from time to time by authority of this act or subsequent acts and treaties of the United States."

There is no express grant of power in the act to the Secretary of Commerce to establish regulations. The regulations subject to which the license is granted are contained in the fourth section of the act.

The fifteenth regulation prohibits a private or commercial station not engaged in the transaction of bona fide commercial business by radio communication or in experimentation in connection with the development and manufacture of radio apparatus for commercial purposes from using a wave length exceeding 200 meters except by special authority of the Secretary of Commerce. Defendant's license authorizes the use of a wave length of 332.4 meters on Thursday nights from 10 to 12 p. m. *when the use of this period is not desired by the General Electric Company's Denver Station.*

Each of the acts of the defendant, relied upon by the United States as the basis of prosecution, is within the prohibition of the fifteenth regulation. Each count of the information covers broadcasting on a wave length of 329.5 meters at a time not covered by the authority in the license. Section 4 contains a special provision for penalties for violations of the regulations as follows:

"For violation of any of these regulations, subject to which a license under sections one and two of this act may be issued, the owner of the apparatus shall be liable to a penalty of one hundred dollars, which may be reduced or remitted by the Secretary of Commerce, * * * and for repeated violations * * * the license may be revoked."

Does the operation of the station upon any wave length at any other time than from 10 to 12 p. m. on Thursday constitute a violation of section 1? The license provides:

"This station to be operated only on Thursday nights from 10 to 12 p. m. Central Standard time and then only when the use of this period is not desired by the General Electric Company's Denver Station."

The provision in section 2 as to stating in the license the hours for which the station is licensed must be read and interpreted in its relation to the entire act.

[1, 2] The Secretary of Commerce is required to issue the license subject to the regulations in the act. The Congress has withheld from him the power to prescribe additional regulations. If there is a conflict between a provision in the license and the regulations established by Congress, the latter must control. Division of time is covered by the twelfth regulation. The provision in section 2 as to hours appears, in view of the references in that section to the regulations, to refer to the regulation as to the division of time. At least, the statute is ambiguous in this respect, and, while it should be given a reasonable construction, ambiguities are not to be solved so as to embrace offenses not clearly within the law. Krichman v. U. S., 256 U. S. 363, 367, 41 S. Ct. 514, 65 L. Ed. 992.

[3] Furthermore, we must remember, in considering an act of Congress, that a construction which might render it unconstitutional is to be avoided. A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but grave doubts upon that score. U. S. v. Standard Brewery, 251 U. S. 210, 220, 40 S. Ct. 139, 64 L. Ed. 229; U. S. v. Jin Fuey

Moy, 241 U. S. 394, 401, 36 S. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854.

If section 2 is construed to give to the Secretary of Commerce power to restrict the operation of a station as the United States contends is done by this license, what is the test or standard established by Congress, by which the discretion of the Secretary is to be controlled? In other words, what rule has Congress laid down for his guidance in determining division of time between the defendant and the General Electric Company? U. S. v. Grimaud, 220 U. S. 506, 519, 31 S. Ct. 480, 55 L. Ed. 563; Union Bridge Co. v. U. S., 204 U. S. 364, 27 S. Ct 367, 51 L. Ed. 523; Field v. Clark, 143 U. S. 649, 692, 12 S. Ct. 495, 36 L. Ed. 294. No language is more worthy of frequent and thoughtful consideration than these words of Mr. Justice Matthews, speaking for the Supreme Court in Yick Wo v. Hopkins, 118 U. S. 356, 369, 6 S. Ct. 1064, 1071 (30 L. Ed. 220):

"When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power."

[4, 5] Congress cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of facts upon which the law makes or intends to make its own action depend. Has Congress prescribed the rule or standard which is to control the Secretary of Commerce in the exercise of his discretion with the degree of certainty required in criminal statutes? It is axiomatic that statutes creating and defining crimes cannot be extended by intendment, and that no act, however wrongful, can be punished under such a statute, unless clearly within its terms. There can be no constructive offenses, and, before a man can be punished, his case must be plainly and unmistakably within the statute. U. S. v. Weitzel, 246 U. S. 533, 543, 38 S. Ct. 381, 62 L. Ed. 872; U. S. v. Harris, 177 U. S. 305, 310, 20 S. Ct. 609, 44 L. Ed. 780; Todd v. U. S., 158 U. S. 278, 282, 15 S. Ct. 889, 39 L. Ed. 982.

[6] If we view the acts of the defendant corporation as violations of the fifteenth regulation, and admit for the present purpose the validity of that regulation, do they constitute a violation of section 1 also because the restrictions imposed under the regulation are included in the license? It is elementary that where there is, in an act, a specific provision relating to a particular subject, that provision must govern in respect to the subject as against general provisions in the act, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates. Endlich, Interpretation of Statutes, § 216; Swiss National Insurance Co. v. Miller, 53 App. D. C. 173, 289 F. 571, 576; Washington v. Miller, 235 U. S. 422, 428, 35 S. Ct. 119, 59 L. Ed. 295; U. S. v. Nix, 189 U. S. 199, 205, 23 S. Ct. 495, 47 L. Ed. 775; Townsend v. Little, 109 U. S. 504, 519, 3 S. Ct. 357, 27 L. Ed. 1012. This rule is particularly applicable to criminal statutes in which the specific provisions relating to particular subjects carry smaller penalties than the general provision. Congress, when it inserted the regulations in the statute, provided especially for their violation. That provision should control, in my opinion, against the general, indefinite, and ambiguous provisions of sections 1 and 2.

[7] My conclusion is that, under the rules applicable to criminal statutes, sections 1 and 2 cannot be construed to cover the acts of the defendant upon which this prosecution is based. Other questions have been argued which it is unnecessary to decide.

[8] Reference has been made to the rule of practical construction. It is sufficient to say that administrative rulings cannot add to the terms of an act of Congress and make conduct criminal which such laws leave untouched. U. S. v. Standard Brewery, 251 U. S. 210, 220, 40 S. Ct. 139, 64 L. Ed. 229.

Finding for defendants.

---

Provisional License for Land Radio Station.

### No. 1851.

#### Class B Limited Commercial.

Department of Commerce, Bureau of Navigation, Radio Service.

Pursuant to the act to regulate radio communication, approved August 13, 1912, Zenith Radio Corporation, a citizen of the state of ————, a company incorporated under the laws of the state of Illinois, having applied therefor, is hereby granted by the Secretary of Commerce for a period of three months on and subject to the restrictions and conditions hereinafter stated and revocable for cause by him, this license to use or operate the apparatus for radio communication (identified in the schedule hereinafter) for the purpose of transmitting to and receiving from ship stations and other land stations, public correspondence, government and service correspondence, and distress signals and messages, at rates of compensation not in excess of those fixed by the international agreement to which the government of the United States has adhered, which have been submitted to and approved by the Secretary of Commerce,

as included in the schedule hereinafter, or for the purpose of conducting experiments for the development of the science of radio communication or the apparatus pertaining thereto, to carry on special tests, using any amount of power or any wave lengths, at such hours and under such conditions as will insure the least interference with the sending or receipt of commercial or government radiograms, of distress signals and radiograms, or with the work of other stations, the purpose of the station being designated by the classification at the head of the license.

2. Public correspondence or limited commercial correspondence authorized by this license shall be limited to certain stations, ships, or lines of ships named hereinafter, which designation is authorized in view of the nature of the service and is independent of the radio system employed.

3. The use or operation of apparatus for radio communication pursuant to this license shall be subject also to the articles and regulations established by the International Radiotelegraphic Convention, ratified by the Senate of the United States, and caused to be made public by the President, and shall be subject also to such regulations as may be established from time to time by authority of subsequent acts and treaties of the United States, in so far as they apply to the class of station indicated by this license.

4. The authority conferred by this license is subject to the provisions of the Act of February 4, 1887, entitled "An act to regulate commerce," as amended by the Act of June 18, 1910, so far as the licensee may be within the operation of said act, and except as provided in the Act of August 13, 1912, or in the International Radiotelegraphic Convention and regulations made part thereof, the station shall transmit all messages offered by those who tender lawful rates on equal terms without discrimination, whether as regards rates, order of transmission, or otherwise.

5. The licensee shall render to the Secretary of Commerce such accounts as the Secretary of Commerce shall direct in respect of all charges due or payable under the International Radiotelegraphic Convention in respect of messages exchanged between the station hereby licensed and other stations and shall pay to the Secretary of Commerce at such times and in such manner as the Secretary of Commerce shall direct, all sums which shall be due from the licensee under such accounts.

6. The apparatus shall at all times while in use and operation be in charge or under the supervision of a person or persons licensed for that purpose by the Secretary of Commerce, and the operator of the apparatus shall not willfully or maliciously interfere with any other radio communication.

7. The station shall give absolute priority to signals and radiograms relating to ships in distress; shall cease all sending on hearing a distress signal; and, except when engaged in answering or aiding the ship in distress, shall refrain from sending until all signals and radiograms relating thereto are completed.

8. The station shall use the minimum amount of energy necessary to carry out any communication desired, except in case of signals or radiograms relating to vessels in distress.

9. The station shall not use a transmitter during the first 15 minutes of each hour, local standard time, except for distress signals, whenever the Secretary of Commerce by notice in writing shall require it to observe a division of time, pursuant to the twelfth regulation of the Act of August 13, 1912.

10. The President of the United States in time of war or public peril or disaster is authorized by law to close the station and cause the removal therefrom of all radio apparatus or may authorize the use or control of the station or apparatus by any department of the government upon just compensation to the owners.

11. The Secretary of Commerce and collectors of customs or other officers of the government authorized by him may at all reasonable times enter upon the station for the purpose of inspecting and may inspect any apparatus for radio communication of such station and the operation and operators of such apparatus.

12. The apparatus shall not be altered or modified in respect of any of the particulars mentioned in the following schedule, except with the approval of the Secretary of Commerce.

Schedule of Station and Apparatus.

Name of owner: Zenith Radio Corporation.

Location: State, Illinois; County, Cook; city or town, Mt. Prospect; street, Rand road, No. ——.

Geographical location: Latitude, N. 42° 03' 50"; longitude, W. 87° 56'.

This station is licensed for communication only with the following land stations, ships, or lines of ships:

Limited Commercial Broadcasting, Class B.— This station is licensed for broadcasting entertainment and like matter on the exact wave length specified. No variation is permitted.

One commercial second class operator or higher required. The wave length assigned and the hours of operation specified may be changed or a division of time may be required, whenever in the opinion of the Secretary of Commerce such action is necessary.

Specific hours during which the station must may be open to service (local standard time): ——

Power: Antenna input. See amendment attached hereto.

Normal day range in nautical miles, ——

Time and method, if any, of sending time signals and hydrographic and meteorological radiograms:

This station to be operated only on Thursday nights from 10 to 12 p. m., Central Standard time, and then only when the use of this period is not desired by the General Electric Company's Denver station. This license is also issued conditionally upon the avoidance of interference with other stations.

Call letters, WJAZ.

—— Coast charges: Per word, ——; minimum per radiogram, ——.

—— Coast charges: Per word, ——; minimum per radiogram, ——.

—— Coast charges: Per word, ——; minimum per radiogram, ——.

Radiotelegraphic system employed: Composite V. T. Telephone Characteristics of transmitting system: Type of spark gap, ——; approximate spark frequency, ——.

Wave length range of receiving system: From 180 meters to 800 meters.

Antenna: Number of masts, 2; height, ——,
——, ——, ——,

Type of aerial: Cone.

Wires: Number, 14; size and kind, 7/22.

Essential dimensions: Maximum height above water, 140 feet; length of horizontal part, 50 feet; length of vertical part, 140 feet; total length measured from apparatus, 160 feet; length of ground connection, cpse feet; fundamental wave length, 310 meters.

### Wave Lengths.

The normal sending and receiving wave length shall be 715 meters.

If the station be classified as a coast station, it shall be prepared to transmit or relay distress calls or messages using the distress wave length as provided by the International Radiotelegraphic Convention in force.

In view of special conditions, the station is authorized to use for communication exclusively with stations licensed by the United States the following additional wave lengths under 600 or over 1,600 meters: Meters, 332.4; meters ——.

The energy, if radiated by the transmitter in two or more wave lengths as indicated by a sensitive wave meter, shall not in any one of the lesser waves exceed 10 per cent. of that in the greatest; and the logarithmic decrement per complete oscillation in the wave trains shall not exceed two-tenths, except when sending signals or messages relating to vessels in distress.

| Sending Wave Length. | Antenna Current. | Logarithmic Decrement | mXÅ Kc/s |
|---|---|---|---|
| 715　meters | Not ascertained. | 715 meters to be used in the place of 600 meters as required in Regulations 42 and 44. | |
| 322.4 meters | 13 | 332.4 meters to be used as required in | 930 kc/s |
| meters | | Regulations and specifications attached hereto and | |
| meters | | | |
| meters | | made a part of this license. | |

The station insures rapid exchange with land wire stations at

————　　　　　　————
(Company.)　　　(Location telegraphic office.)

————　　　　　　————
(Company.)　　　(Location telegraphic office.)
in the following manner: ——.

This license will expire on the 20th day of December, 1925.

[Seal of Department of Commerce.]

Acting Secretary of Commerce.
Commissioner of Navigation.

Washington, D. C., September 21st, 1925.

### Inspections.

| Date. | Inspector. | Remarks. |
|---|---|---|
| August 26, 1925. | G. S. Turner. | |
| | | |
| | | |
| | | |