## NORDGREN v. UNITED STATES.
### No. 12294.

United States Court of Appeals
Ninth Circuit.
April 24, 1950.

Howard D. Stabler, Juneau, Alaska, for appellant.

P. J. Gilmore, Jr., U. S. Attorney, Stanley D. Baskin, Asst. U. S. Attorney, Juneau, Alaska, for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

HEALY, Circuit Judge.

Appellant was indicted and convicted under 18 U.S.C.A. § 91, 1946 ed.,[1] of offering

---

1. The provisions of the statute, so far as pertinent, are as follows:

"§ 91. (Criminal Code, section 39.) Bribery of United States officer. Whoever shall promise, offer, or give, or cause or procure to be promised, offered, or given, any money or other thing of value * * * to any officer of the United States, or to any person acting for or on behalf of the United States in any official function, under or by authority of any department or office of the Government thereof, * * * with intent to influence him to commit or aid in

and giving to one MacKenzie, a fishery patrol agent of the Fish and Wildlife Service of the Department of the Interior, alleged to be a person acting for and on behalf of the United States in an official function, a bribe with the intention of inducing MacKenzie to refrain from reporting that appellant had fished for salmon illegally in a closed area. He was sentenced to imprisonment for a period of fourteen months and fined the sum of $200. His brief on appeal specifies six errors, not all of which need be noticed.

, His first contention is that the evidence failed to prove the offense charged in that MacKenzie was not shown to be a "person acting for or on behalf of the United States in any official function." The contention was advanced on the trial as one of law, that is, it appears predicated not so much on infirmities in the evidence as on appellant's construction of the statute. There was no objection to the form of the proof as to MacKenzie's status, nor was there any dispute concerning the facts bearing thereon. It was shown that he was employed during the period from June 18 to August 22, 1948, by the Fish and Wildlife Service of the Department of the Interior as a fishery patrol agent, being hired by one Ralston, the head law enforcement officer of the Service.[2] He was administered an oath of office and his salary was paid by Treasury check. The Service transported him by steamer on June 22 to Red Fish Bay, Baranof Island, and picked him up there at the termination of his work, a boat owned by the Service being left with him for his use in the interim. His duties were to observe the part of the Bay extending from the Second Narrows northerly to the Bay's head where a stream enters, that being an area officially closed to salmon fishing; to see that no one fished there; and to report to the Service any persons who fished in

the forbidden area. He testified that "nothing much was said" to him "about arresting anybody," and he seems not to have felt that he had authority to apprehend offenders.

 Appellant calls attention to the provisions of 48 U.S.C.A. § 227 to the effect that all employees of the Service, "designated by the Director, shall be considered as peace officers and shall have the same powers of arrest of persons and seizure of property" as have United States Marshals or their deputies. The point attempted to be made is that, since the evidence did not show that MacKenzie was appointed by the Director, he did not possess the powers of a peace officer and could not therefore be considered as performing an official function in the sense of the statute. However, the statute speaks of "officers" and "persons" in the disjunctive. It is not thought that an agent of the Service, performing the duties MacKenzie was authorized to discharge, need be designated by the Director or vested with the powers of a peace officer in order to bring his function within the statutory language. MacKenzie might, and did, exercise official functions apart from the making of arrests.

It is argued that MacKenzie's status was not different from that of the employee involved in Krichman v. United States, 256 U.S. 363, 41 S.Ct. 514, 515, 65 L.Ed. 992. Krichman bribed a baggage porter employed at the Pennsylvania terminal in New York City to induce him to deliver a trunk containing furs. At that time (during the first World War) the Pennsylvania road was being operated by a Director-General under presidential proclamation, as were all the railroads in the country. The question was whether the porter was a person acting for the United States in an official function. The court thought that the act aims to punish the bribery of those "exercising of-

---

committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be fined" etc.

2. The departmental regulations specify the officials authorized to employ stream

watchmen or patrol agents. See Sec. 1.16, Title 15, Code of Federal Regulations. For statutory authority see 5 U.S.C.A. § 43. For the authority conferred on the Department to supervise and control the Alaska fisheries consult 48 U.S.C.A. §§ 220–248b.

ficial functions under or by the authority of a department or office of the government." It observes that the statute was passed long before there was any thought of taking over the railroads, and that this was a circumstance to be considered in determining whether the situation was one intended to be dealt with by Congress. The government's situation in respect of the railroads was likened to its relations with wholly owned corporate entities, such as the Emergency Fleet Corporation. The court was of opinion that to include the baggage porter among those performing official functions for the United States was, in the circumstances, giving to the statute too broad an application.[3]

The decision is of no help to appellant. His case is more nearly akin to United States v. Birdsall, 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930, which had to do with the bribery of special agents of the Bureau of Indian Affairs employed in connection with the suppression of the liquor traffic among the Indians, that is to say, exercising functions under or by authority of a regular and long-established executive department. In the Birdsall case the statutory language was given a broad construction as applied to persons in that category. Consult, also, United States v. Ingham, D.C., 97 F. 935.

 Appellant made timely objection to and has assigned as error the giving of an instruction that MacKenzie was "a person acting for and on behalf of the United States in the function of conserving and protecting the commercial salmon fisheries of Alaska, under and by authority of the Department of the Interior." The vice of the instruction is said to be that it charged the jury as a matter of law that MacKenzie was of the class of persons described in the statute, whereas the question whether he was or not should at the least have been left to the jury. We think the charge was not error. There was, as already indicated, no controversy as to the facts pertaining to the functions MacKenzie was performing, and the charge did not misdescribe his

duties. Moreover appellant did not ask for an instruction submitting to the jury the question whether MacKenzie was performing an official function. The court in the course of its charge repeatedly informed the jury that it was their sole province to determine the facts.

 Another claim is that the court was in error in refusing to admit proof of appellant's acquittal of charges of illegal fishing in the closed waters of Red Fish Bay on August 10, 15 and 16, 1948. On the trial of the instant case MacKenzie testified to appellant's having fished in those waters on one or the other or on several of those dates, as presumably he had done in the illegal fishing case. The point made is that evidence of the acquittal on the charge of illegal fishing would tend to contradict MacKenzie's testimony in the bribery prosecution, or might be considered by the jury as having adverse effect on his credibility. We see little force in the argument. Evidence as to what disposition another jury had made of a different charge was without value since it can not be known what considerations induced their verdict. Such evidence is not only without real worth but its admission would have a positive tendency to confuse or mislead the jury. The court charged that "testimony has been admitted showing, or tending to show, that the defendant fished unlawfully in Red Fish Bay. This evidence was admitted not to prove that the defendant violated the fisheries law, but to be considered by you in determining, in connection with all the other evidence, whether the defendant committed the crime charged in the indictment." This instruction, we think, appropriately covered the situation.

Finally appellant complains of a matter not called to the attention of the court during the progress of the trial. He contends that on the basis of MacKenzie's testimony the latter was or might fairly be thought an accomplice; that the question whether or not he was such should have been submitted to the jury, and the latter

---

3. The statute was reenacted in a revised form as § 201 of Title 18, effective Sept. 1, 1948, to keep pace with the present ramifications of the executive branch. Consult Reviser's Notes.

instructed, in line with a statute of Alaska,[4] that a conviction may not be had upon the uncorroborated testimony of an accomplice.

Briefly, MacKenzie's testimony touching the point was this. On August 9, 1948, appellant and two other men came in a fishing boat through the Narrows and anchored near MacKenzie's camp. Appellant approached MacKenzie and spoke of the fish— "about a thousand sockeye in the mouth of the creek." Later that day appellant came to MacKenzie's tent and said something to the effect that MacKenzie would be given a share, that there was no reason why he could not make four hundred fifty or five hundred dollars for himself, to which MacKenzie replied, "O.K." On the occasion of the first encounter MacKenzie had informed appellant that he was a fishery patrol agent, formerly known as Stream Watchman. On August 12, having again put in an appearance, appellant approached MacKenzie, showed him a fish slip and said, "We are giving you one-sixth," and handed MacKenzie two one hundred dollar bills. He obtained also MacKenzie's address and said he would send the rest of the money after the last trip.

MacKenzie was a man 63 years of age. He testified that during the period in question he was the only agent of the Service at Red Fish Bay; that he had no means of communication or of travel other than the outboard motor boat that had been left with him; that the boat was not good for rowing, and that he had not been able to start the motor supplied for it. He said that on August 9 he refused appellant's invitation to go on board the latter's boat for coffee, believing that appellant intended to fish in the closed waters, and that he, MacKenzie, did not want to talk with him. On the 12th, when appellant came the second time, MacKenzie says he felt, as before, uneasy about the presence and purposes of the three men. Accordingly he decided that he would agree to any propo-sition they had to offer until he got away from there. He said that appellant and his two crewmen were "great big husky guys and they wanted them fish"; that he was afraid they would put a rock around his neck and sink him in the Bay; and that he took the money offered and tried to get along until he could get away from the locality. On cross-examination he said that after he took the money he was not afraid any more, that everything seemed to be quite friendly.

His testimony is, further, that when the Service vessel "Scoter" came on August 21 to pick him up, he reported the bribery to Captain Harndin of the vessel soon after going aboard; and that upon the ship's arrival at Sitka on August 22nd he at once reported the affair to Agent Hillsinger of the Service at the latter's office, turning over to him the two bills.[5] These were the first opportunities he had to report the incidents occurring in the Bay either to officials of the Service or to any other law enforcement agencies. MacKenzie's testimony concerning his reporting the affair was confirmed on the trial both by Harndin and by Hillsinger. We gather that his report was the inspiration for the prosecution for violation of the fisheries law as well as for the lodging of the bribery charge.

Naturally appellant when on the stand denied that any bribe was offered or given, so that the sole evidence on the point was that of MacKenzie. As already indicated, appellant did not suggest the accomplice theory during the course of the trial and made no request for instructions such as he now claims should have been given.

■■ We need not decide whether the court, had it been asked to do so, might properly have submitted the matter to the jury. In a criminal case where the propriety of a request on a particular subject is doubtful, it is usually thought the better practice to instruct out of an abundance of precaution. The federal appellate courts, mindful of the requirements of Rule 30 of

---

4. Section 66-13-59, Alaska Compiled Laws, 1949. We think it unnecessary to consider whether this territorial statute governs in a prosecution for violation of an act of Congress.

5. The bills were introduced in evidence at the trial.

the Criminal Rules, 18 U.S.C.A., seldom reverse for failure to give instructions in the absence of a seasonable request, and will do so only if the omission appears to have been so seriously prejudicial as to lead the court to believe that the accused was not given a fair trial. In this instance we are unable to discern any prejudice. A study of the record leaves no impression that MacKenzie may have been criminally corrupt or that his conduct was motivated by an evil intent. Even if it be assumed that his professed motives were rationally open to suspicion, it would not be difficult to find in this record substantial corroboration of his testimony concerning the bribery.

Affirmed.