**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 99-21044**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**SHANNON THOMAS,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Southern District of Texas**

_____
January 24, 2001

Before BARKSDALE and BENAVIDES, Circuit Judges, and VELA[*], District
Judge.

RHESA HAWKINS BARKSDALE, Circuit Judge:

At issue is whether a guard employed by a private entity
operating a detention center under contract with the Immigration &
Naturalization Service is a "public official" for purposes of the
federal bribery statute under which Shannon Thomas was convicted,
18 U.S.C. § 201(a)(1), (b)(2).  We **AFFIRM**.

I.

Thomas was employed as a guard at a private prison facility in
Texas, owned and operated by Corrections Corporation of America

_____

[*]United States District Judge for the Southern District of
Texas, sitting by designation.

(CCA), and at which CCA contracted exclusively with the INS to house INS detainees. CCA's authority to house the detainees was derived from the contract, which required CCA to prepare, and submit to the INS for approval, personnel policies complying with United States Department of Labor regulations. The contract also required CCA to develop standards for employee conduct and disciplinary actions emulating federal standards, and to hold employees accountable based on such standards, including employees *not, inter alia*: accepting from, or giving to, a detainee a gift or service; or entering into any business relationship with detainees or their families, *such as selling, buying or trading personal property*. The contract also required CCA to: advise its employees of the standards of conduct; require them to certify in writing they had read and understood the rules; and report all violations, or attempted violations, of the standards of conduct or any criminal activity. Under the contract, rules violations could "result in employee dismissal by [CCA] or at the discretion of INS".

Thomas performed the same duties, and had the same responsibilities, as a federal guard employed at a federal prison facility; obviously, his duties included enforcing the established rules. One rule prohibited guards from bringing contraband, *including tobacco products*, into the prison. Thomas had been trained regarding the contraband prohibition, and knew that

2

bringing cigarettes into the facility was in violation of his official duty.

Charged with bringing cigarettes to detainees in exchange for money, Thomas was indicted for accepting a bribe, in violation of 18 U.S.C. § 201(b)(2), which proscribes a "public official" accepting anything of value in return for violating his official duty. Thomas' motion to dismiss the indictment, on the basis he was *not* a § 201(b)(2) "public official", was denied, the district court holding Thomas "occupied a position of trust with official federal responsibilities". Thomas entered a conditional guilty plea, reserving his right to appeal the "public official" issue. He was sentenced to 60 months probation and fined $2,000.

## II.

Thomas contends he was *not* a § 201(b)(2) "public official" because: he did *not* have any responsibility or authority to allocate federal resources or implement federal policy, but merely was employed by CCA; and he did *not* occupy a position of public trust with official federal responsibilities. We review *de novo* the district court's § 201(b)(2) "public official" interpretation. *E.g.*, **United States v. Fitch**, 137 F.3d 277, 281 (5th Cir. 1998).

Among other things, it is unlawful for a "public official ... to ... receive ... anything of value ... in return for ... being induced to do ... any act in violation of the *official duty* of such official". 18 U.S.C. § 201(b)(2)(C) (emphasis added). For §

3

201(b)(2)(C) purposes, a "public official" includes, *inter alia*, an "employee *or person acting for or on behalf of the United States ... in any official function....*" 18 U.S.C. § 201(a)(1) (emphasis added).

*Dixson v. United States*, 465 U.S. 482, 496-97 (1984), held that officers of a private, non-profit corporation which administered federal community development block grants from HUD were such "public officials". "[T]he proper inquiry is *not* simply whether the person had signed a contract with the United States or agreed to serve as the Government's agent, but rather *whether the person occupies a position of public trust with official federal responsibilities*." *Dixson*, 465 U.S. at 496 (emphasis added). "To be a public official ..., an individual must possess some degree of official responsibility for carrying out a federal program or policy." *Id*. at 499.

The Court rejected the contention that the officers could *not* have been acting "for or on behalf of the United States" because neither they, nor their employer, had entered into any agreement with the Government. *Id*. at 490. Because the officers were charged with abiding by federal guidelines in allocating the grants, they "assumed the quintessentially official role of administering a social service program established by ... Congress". *Id*. at 497.

4

Although our court has *not* addressed directly the scope of § 201(b)(2) "public officials", several others have. Persons with duties similar to Thomas' were held to be "public officials".

In *United States v. Velazquez*, 847 F.2d 140 (4th Cir. 1988), a federal inmate housed at a county jail was convicted for bribing a deputy sheriff to help the inmate and other federal inmates escape. The jail had contracted with the Government for the housing, care, and supervision of federal prisoners. *Id*. at 142. The deputy sheriff was held to be a "public official" because, pursuant to that contract, the deputy supervised the federal prisoners in the same manner as a federal jailer would; the jail was subject to periodic inspections by federal employees; and the deputy could *not* have supervised federal inmates absent some federal authority. *Id*.

*United States v. Neville*, 82 F.3d 1101 (D.C. Cir. 1996), involved the bribery conviction of a corrections officer at the District of Columbia jail. The officer contended he was *not* a § 201(b)(2) "public official" because he exercised *no* discretion over government policy or spending, and merely followed regulations and orders. *Id*. at 1103-04. The court, however, had "no doubt" the officer performed an "official function": "Protecting the public from incarcerated criminals is a quintessentially sovereign function, carrying with it a significant measure of public trust, which the Supreme Court unanimously recognizes as the touchstone

5

for determining whether an individual is a public official." *Id*. at 1106 (citing *Dixson*, 465 U.S. at 496).

*United States v. Ricketts*, 651 F. Supp. 283, 283-84 (S.D.N.Y.), *aff'd*, 838 F.2d 1204 (2d Cir. 1987) (Table, No. 87-1337), held a "halfway house" manager, charged with accepting "a bribe to 'fix' a 'dirty' urine sample for a federal inmate residing at [the] halfway house", *id*. at 283, was a "public official", because he "occupied a supervisory role in an organization that contracted with the Bureau of Prisons, pursuant to a federal statute, to house and supervise federal convicts". *Id*. at 284. The court stated it "need *not* go nearly as far as ... in *Dixson*. We need only rely on the more modest proposition ... that a formal, contractual bond with the Federal Government is sufficient to bring a defendant within the ambit of Section 201(a) as a 'public official'". *Id*. (emphasis added). The manager's "position [was] closely analogous to that *of a prison guard, who is unquestionably a public official*". *Id*. (emphasis added).

Thomas compares himself to the baggage porter in *Krichman v. United States*, 256 U.S. 363 (1921), which involved the statutory predecessor to § 201. The defendant in *Krichman* was charged with bribing the porter during World War I to transport trunks containing expensive furs. *Id*. at 364. The Court concluded that the porter, although employed by a railroad seized by the

6

Government during the war, was *not* acting "for or on behalf of the United States", because he was *not* "performing duties of an official character". *Id*. at 365-66.

It goes without saying that *Krichman* is distinguishable. The porter did *not* have any "official responsibility for carrying out a federal program or policy". *See Dixson*, 465 U.S. at 499. Unlike the porter in *Krichman*, but like the corrections officer in *Neville*, Thomas "occupied a position involving a far greater degree of public responsibility than a baggage porter". *Neville*, 82 F.3d at 1106.

Thomas was a "public official", as defined by § 201(a)(1). As a corrections officer for CCA, which contracted with the INS to house federal detainees, Thomas performed the same duties, and had the same responsibilities, as a federal corrections officer employed at a federal prison facility. Although he did *not* have any authority to allocate federal resources, c*f*. *Dixson*, 465 U.S. at 447, Thomas nevertheless occupied a position of public trust with official federal responsibilities, because he acted on behalf of the United States under the authority of a federal agency which had contracted with his employer. *See Neville*, 82 F.3d at 1106 ("[p]rotecting the public from incarcerated criminals ... [carried] with it a significant measure of public trust"). Pursuant to CCA's contract with the INS, CCA correctional officers had to abide by federal regulations; the rules and regulations regarding the

7

standards of conduct for CCA correctional officers, including *not* bringing contraband into the prison, were subject to INS approval; and any employee who violated those standards could be dismissed by either CCA or the INS.

Also misplaced is Thomas' reliance on ***Richardson v. McKnight***, 521 U.S. 399 (1997), in which CCA corrections officers were held *not* entitled to claim qualified immunity from 42 U.S.C. § 1983 civil rights actions. That doctrine serves to "protect[] government's ability to perform its traditional functions by providing immunity where necessary to preserve the ability of government officials to serve the public good or to ensure that talented candidates were *not* deterred by the threat of damages suits from entering public service". ***Id.*** at 408 (emphasis added; internal quotation marks and citation omitted). Those purposes did *not* support qualified immunity being accorded private prison guards because, *inter alia*, "marketplace pressures provide the private firm with strong incentives to avoid overly timid, insufficiently vigorous, unduly fearful, or 'non-arduous' employee job performance". ***Id***. at 410. Along this line, the Court noted CCA was required to have insurance sufficient to compensate victims of civil rights torts. ***Id***.

It goes without saying that the policy considerations supporting private corrections officers' *not* being entitled to qualified immunity are quite different from those concerning

8

whether they are "public officials" for purposes of the federal bribery statute. Obviously, the Government has just as strong an interest in the integrity of private corrections officers charged with guarding federal detainees as it has in the integrity of federal corrections officers employed in federal facilities. Under such circumstances, and for purposes of the federal bribery statute, there is simply *no* basis for differentiating between such private and public officers.

## III.

For the foregoing reasons, the judgment is

*AFFIRMED.*