### UNITED STATES v. LEVINE.
#### No. 343.

Circuit Court of Appeals, Second Circuit.
July 27, 1942.

746

Milton H. Friedman, of New York City, for appellant.

Mathias F. Correa, U. S. Atty., of New York City (John C. Hilly, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before SWAN, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The defendant was an employee of the Market Administrator for the New York Metropolitan Milk Marketing Area from September 3, 1940, to July 21, 1941. The Market Administrator was selected by the Secretary of Agriculture pursuant to Order No. 27 creating the New York Metropolitan Area issued by the Secretary by virtue of the powers vested in him by Public Act No. 10, 73rd Congress, reenacted and amended to become 7 U.S.C.A. Chap. 26A, § 671 et seq. and § 601 et seq., commonly called the Agricultural Marketing Agreement Act of 1937. Defendant's duties consisted of receiving market surplus claims from milk handlers and checking them for accuracy as to the number of pounds diverted, the amount shipped, the mileage and the routes followed. These individual claims for payment were not rechecked by anyone else; only the totals were reviewed. For this work and for the making of an economic analysis of market service payments the defendant received an annual salary of $2,000.

In connection with these duties the defendant had such facts at his disposal as led him to believe that he could effect substantial savings to Sheffield Farms Company, Inc., one of the milk producers in the New York area. At first, on July 2, 1941, after conferring with Wellwood, Sheffield's production manager, about pos-

sible savings, the defendant applied to him for a position with the company. Later, on July 14th, pursuant to a further conference with Wellwood and Grean, Sheffield's legal adviser, defendant concluded that he could be of more help if he retained his position with the Market Administrator where he would have continued access to the records of other milk handlers and "would be able to use his influence in standing off investigations or some re-audits" of Sheffield's accounts. He asked as payment for these services a $3,000 initial payment and $5,200 a year payable weekly. On July 21st a final conference was held to settle details at which he produced papers from the files of the Administrator and at which the $3,000 payment was placed on a desk. Defendant picked it up and was thereupon apprehended by Federal Bureau of Investigation officers who had been waiting in the next room.

At the trial which was held before a jury a verdict of guilty was returned under an indictment charging the defendant with accepting and receiving a bribe while acting for and in behalf of the United States in an official capacity with the intent to have his decision and action in matters brought before him influenced thereby. On December 10, 1941 the defendant was sentenced to two years in a federal penitentiary.

The appeal presents three questions, (1) whether defendant was acting for or in behalf of the United States in an official capacity, (2) whether the bribe was accepted to influence his decision in a matter to come before him in his official capacity and (3) whether the New York Market Administrator, and hence defendant, was an agency of the United States.

This last point is based upon the technicality that proof was not submitted at the trial that the Market Administrator had ever filed the bond required to qualify him for the position. The Government submitted in evidence a certified copy of the appointment by the Secretary of Agriculture of Nikitas John Cladakis as Market Administrator for the New York area effective May 28, 1940. Since that appointment was not made conditional upon the filing of the bond, there can be no doubt but that Cladakis was in fact the lawfully appointed Market Administrator. In the absence of proof to the contrary we may assume that the appointment was entirely proper.

Section 117 of the Criminal Code, 18 U.S.C.A. § 207, under which defendant was indicted and convicted applies by its terms only to persons who are officers of the United States or persons acting for or in behalf of the United States or of Congress in an official capacity. While it is clear that this does not include every employee of the United States, Krichman v. United States, 256 U.S. 363, 41 S.Ct. 514, 65 L.Ed. 992, we think that defendant was such a person as falls within the scope of the section. Pursuant to §§ 8c(3) and (4) of the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 608c(3) and (4), the Secretary of Agriculture was given authority to issue orders to effectuate the declared policy of the Act. In exercise of this authoriy the Secretary issued Order No. 27 effective September 1, 1938, creating a "New York metropolitan milk marketing area" and providing for a "market administrator" to carry out the further provisions of the order. Sec. 927.2 of this order states in part, "The agency for the administration of this order shall be a market administrator who shall be a person selected and subject to removal by the Secretary." It then goes on to provide that the market administrator's compensation shall be determined by the Secretary, to whom he is to submit his records and books when requested. He is also to submit to the Secretary such information as the latter may request, and he is empowered to receive, investigate and report to him all complaints of violations of the order. Although the funds for administration of the order come not from the Department of Agriculture, but are taxed directly to the handlers in the area in proportion to the number of pounds of milk each handler receives, this does not make the Administrator any the less an agency of the United States since the receipt of the funds is pursuant to the authority of the United States as delegated to the Secretary and to the Administrator.

The Administrator is further authorized by the order "to employ and fix the compensation of such persons as may be necessary to enable him to administer the terms and provisions" of the order. Under this section the defendant was employed, and in view of the responsible nature of his position with this governmental agency we think it proper to say that he was a person in an official position acting on behalf of the United States. Compare Whitney v. United States, 10 Cir., 99 F.2d 327 (clerk in

the Osage Indian Agency); Sears v. United States, 1 Cir., 264 F. 257 (government inspectors of shoes for the Army).

■■ It is of no consequence that the Market Administrator may also have been an agent of the State of New York. That did not make him or his employees in their federal capacity any less subject to the criminal provisions regulating the conduct of persons acting on behalf of the United States. Nor is any question of double jeopardy presented, for even had the defendant been prosecuted by the State for the same deeds, which has not been claimed, a conviction there would not bar subsequent prosecution for this federal crime. United States v. Lanza, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314.

■ The mere fact that several other Acts creating different agencies of government have specifically provided that the employees of those agencies are to be subject to this criminal provision does not, of course, mean that the broad provisions of the section are not applicable to this Market Administrator and his employees.

■ Finding defendant to be one of the persons contemplated by the section, we have but to determine whether he received the bribe in order to have his decision or action influenced on any matter coming before him in his official capacity. The services he proposed to perform in return for the money were to make available to Sheffield certain records from his office and to use his influence to stave off investigations and re-audits of the Sheffield accounts. Whether the disclosure of the records of the Administrator would alone be enough we need not decide. The case was not thus broadly submitted to the jury. The judge charged that, "* * * while the indictment charges the defendant with accepting money and promises for the purpose and with the intent to have his decision or action influenced on matters which by law were brought before him for action or decision, if you find there were no such matters for the defendant to decide or act on, then the charge of bribery under this statute has not been established." We think it clear that the proof of defendant's intent to be influenced by the money and of his promises to prevent investigations which would otherwise be made was sufficient to support the verdict under this charge. It has several times been held that the bribed employee need not be one invested with the power of final decision, "But that he was

one within the class charged with making preliminary investigation" is enough. Whitney v. United States, supra, 99 F.2d at page 330. It has been recognized that "final decisions frequently, perhaps generally, rest in large part upon the honesty and efficiency of preliminary advice." Sears v. United States, supra, 264 F. at page 261. See, also, United States v. Birdsall, 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930. Surely the avoidance of the investigation upon which final action would depend is as much included as would be falsification of the facts elicited from the investigation.

Nothing in Krichman v. United States, supra, is to the contrary for that case turned, not upon whether the bribe was to influence that defendant's official action, but upon whether that defendant was acting for the United States in an official capacity. It was held that he, as a porter in the employ of the Pennsylvania Railroad which was being controlled and run by the United States during the first World War, was not acting for the United States in any official capacity. The facts here are so different as to require no comment.

Judgment affirmed.