847 F.2d 140
 25 Fed. R. Evid. Serv. 919
 UNITED STATES of America, Plaintiff-Appellee,
v.
Crescencio VELAZQUEZ, a/k/a Crencio Velazquez, a/k/a Tony
Velazquez, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Armando Luis SANTIESTEBAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
George Paul DRINKWINE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Fisk CRUTCHLEY, a/k/a "X", Defendant-Appellant.
 Nos. 87-5062 to 87-5065.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 7, 1988.
Decided May 26, 1988.
 
 Lawrence Wilson Hewitt, George V. Laughrun, II, Dale Stuart Morrison, Harold Johnson Bender, Charlotte, N.C., for defendants-appellants.
 Debra Jo Stuart, Asst. U.S. Atty. (Thomas J. Ashcraft, U.S. Atty., Charlotte, N.C., on brief), for plaintiff-appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation; ERVIN, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 ERVIN, Circuit Judge:
 
 
 1
 Appellants Santiesteban, Velazquez, Drinkwine, and Crutchley were each indicted for conspiracy to escape from the Mecklenburg County, North Carolina, Jail in violation of Title 18 U.S.C. Secs. 371 and 752, and for instigating, aiding and assisting the attempted escape of an individual incarcerated in violation of Title 18, U.S.C. Sec. 752. In addition, Velazquez and Santiesteban were indicted on charges of bribing a public official in violation of Title 18, U.S.C. Sec. 201(b). The defendants were convicted on all counts. They appeal asserting numerous errors. We affirm.
 
 I.
 
 2
 During June of 1986, appellants, all inmates in the Federal Prison System, were housed in the Mecklenburg County Jail in Charlotte, North Carolina, for matters not at issue in this appeal. George Evans Harp, another Federal inmate, testified at trial that during this time he became friendly with Mecklenburg County Deputy Sheriff Keith Gebhardt, who worked in the jail. With Deputy Gebhardt's assistance, Harp arranged to move several prisoners, including all the defendants, into his prison cell.
 
 
 3
 The evidence at trial showed the inmates planned to smuggle in cutting equipment, in packages brought in by Deputy Gebhardt, in order to attempt an escape. Velazquez arranged for hacksaw blades to be shipped to Charlotte. Deputy Gebhardt brought at least two packages into the jail. Evidence indicated the care packages contained all the necessary toiletries: shampoo, deodorant, hacksaw blades and one half ounce of cocaine. Velazquez arranged for money to be sent to Deputy Gebhardt as compensation for his services. The deputy received $1,000 for the first delivery, and a second $1,000 was waiting for him at Western Union at the time of defendants' arrests.
 
 
 4
 Drinkwine and Crutchley cut the bars while the others usually stood guard.
 
 
 5
 Acting on a tip, the FBI investigated the attempted jail break and arrested the defendants along with Harp. Harp pled guilty to all charges and testified at the trial. Numerous other inmates and Deputy Gebhardt also testified. Following a five day trial, the defendants were convicted as charged.
 
 II.
 
 6
 Velazquez appeals his conviction under Title 18, U.S.C. Sec. 201(b), asserting that Deputy Gebhardt was not a "public official" within the meaning of this bribery statute. Section 201(b) prohibits offering "anything of value to any public official ... with intent (3) to induce such public official ... to do or omit to do any act in violation of his lawful duty." Section 201(a) defines a public official as "... an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof."
 
 
 7
 In Dixson v. United States, 465 U.S. 482, 104 S.Ct. 1172, 79 L.Ed.2d 458 (1984), officers of a private corporation administering federal block grants were deemed public officials under Sec. 201. The Supreme Court found the officers were charged with day-to-day administration of a national program. The employees were well-aware of their responsibilities for implementing the federal program, and they were subject to periodic audits. Based on these factors, the Supreme Court concluded that the officers were public officials, given the broad interpretation Congress intended for Sec. 201.
 
 
 8
 To determine whether any particular individual falls within this category, [public officials], the proper inquiry is not simply whether the person has signed a contract with the United States or agreed to serve as the Government's agent, but rather whether the person occupies a position of public trust with official Federal responsibilities. Persons who hold such positions are public officials within the meaning of Sec. 201 and liable for prosecution under the Federal bribery statute.
 
 
 9
 Dixson at 496, 104 S.Ct. at 1180, 79 L.Ed. at 470, 471.
 
 
 10
 The Court in Dixson noted with approval the broad interpretation given Sec. 201 by the Second Circuit in United States v. Levine, 129 F.2d 745 (2d Cir.1942). In Levine, a Market Administrator employee solicited bribes from a milk handler. Levine was not a federal employee or paid by federal funds. The Second Circuit found Levine was a public official because of the federal nature of his responsibilities.
 
 
 11
 Velazquez argues that the status of Deputy Gebhardt indicates he was not within the scope of Sec. 201. Gebhardt was a Mecklenburg County employee, receiving no federal funds. The federal prisoners he supervised were not segregated from state inmates. The prosecution pointed out that the Mecklenburg County Jail was under a contract with the federal government for the housing, care and supervision of federal prisoners. The federal government paid the jail a sum for each federal prisoner per day.
 
 
 12
 In keeping with the analysis in Dixson and Levine, this court looks at the nature of the responsibilities designated to Gebhardt. Pursuant to the contract between the federal government and the Mecklenburg County Jail, Deputy Gebhardt supervised the federal prisoners as a federal jailer would. Just as the books of the private corporation in Dixson were subject to audits, the Mecklenburg jail was subject to inspections by the federal prison authorities. Without federal authority, the Mecklenburg jailers could not have supervised federal inmates.
 
 
 13
 Velazquez cites United States v. Del Toro, 513 F.2d 656 (2d Cir.1975), cert. denied, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed. 42 (1974) (the assistant administrator of a model cities program was not Sec. 201 public official) and United States v. Loschiavo, 531 F.2d 659 (2d Cir.1976) (same) as support for his position. However, both cases were criticized for their reasoning in Dixson, and furthermore both are distinguishable. Both involved activities of a strictly municipal nature which were merely funded by the federal government. In contrast, the Mecklenburg jailers acted as federal jailers would in supervising the federal inmates.
 
 
 14
 Based on the federal responsibilities carried out by Deputy Gebhardt, this court finds that he was a public official under Sec. 201(a). Thus, we find no error in the jury's convicting Velazquez of bribing a public official in violation of Sec. 201(b).
 
 III.
 
 15
 Defendants also contend that they deserve a new trial because the trial court charged the jury improperly with regard to reasonable doubt. They are correct in their general assertion that this court discourages extensive definitions of reasonable doubt. "[T]he most likely outcome of attempts to define reasonable doubt is unnecessary confusion and a constitutionally impermissible lessening of the required standard of proof." Murphy v. Holland, 776 F.2d 470 (4th Cir.1985), vacated and remanded on other grounds, 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 334 (1986).
 
 
 16
 However, in this case, the trial court restated the obvious when he narrowly instructed the jury that reasonable doubt is "not beyond all doubt, but it is beyond such a doubt as leaves you reasonably convinced--not reasonably convinced, but firmly convinced." (Joint Appendix at 336.) The record indicates that the trial court gave these instructions in response to defendants' reliance on the burden of proof in their opening statements and closing arguments.
 
 
 17
 Although this court adheres to its position that instructions regarding reasonable doubt are inadvisable, we find that in light of the repeated comments and analogies made by the defense counsel and the narrow scope of the jury charge, the trial court's instructions do not constitute reversible error.
 
 IV.
 
 18
 The defendants also allege numerous evidentiary errors. The alleged defects include the admission of evidence of drug use by the defendants, the admission of evidence of defendant Crutchley's previous escape attempt, the admission of evidence that Velazquez was armed with hand grenades in an airport, the initial admission of threats received by a witness for the prosecution and the exclusion of a psychological report.
 
 
 19
 In regard to the evidence of drug use, the previous escape attempt and the alleged threats received by a government witness, these elements were either properly admitted to show the pattern or practice of the crimes charged, or any admissibility defects were cured by the trial court's instructions. The drugs were an interrelated part of the escape plan, used as payment and inducement to participate. The evidence of a prior escape attempt indicated intent and motive. Fed.R.Evid. 404(b). The trial court gave extensive instructions to the jury, limiting their use of the evidence of prior bad acts. See United States v. Masters, 622 F.2d 83 (4th Cir.1980).
 
 
 20
 Similarly, the trial court's limiting instructions regarding the admission of evidence of threats cured any reversible defect. Upon realizing that the witness could not specifically identify which defendant threatened him, the court mitigated the effects of his testimony with cautionary instructions to the jury. Thus, we find no error concerning these items of evidence. Additionally, although we see no reason for the trial court to have admitted the hand grenade evidence, we conclude that the decision was harmless error. This evidence alone could not have unduly prejudiced the jury, particularly in view of other overwhelming evidence of guilt. Id. at 87.
 
 
 21
 Along the same line, this court concludes that the exclusion of the psychological report on the state's witness was not reversible error. Admittedly, we see no justification for the trial court sealing the report and withholding its contents from the defense counsel. Nevertheless, having studied the concealed report, we conclude that the information it contained is immaterial under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The report dates back over a decade and its information is stale. Furthermore, its disclosure could hardly have painted Harp in a worse light than did the impeaching evidence brought forth by the defense. Harp admitted on cross-exam to drug use, smuggling of controlled substances, chronic drinking, and escape attempts.
 
 V.
 
 22
 In summary, this court concludes that the Mecklenburg County deputy sheriff is a public official for purposes of Sec. 201, and that the jury instructions given and evidentiary rulings made by the trial judge do not constitute reversible error. The judgment of the district court is
 
 
 23
 AFFIRMED.