**UNITED STATES of America, Plaintiff,**

v.

**Wayne RICKETTS, Defendant.**

**No. 86 Cr. 787 (WK).**

United States District Court,
S.D. New York.

Jan. 5, 1987.

Robert Garcia, Asst. U.S. Atty., S.D. N.Y., for plaintiff.

Susan Kellman by David H. Weiss, New York City, for defendant.

### MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Defendant Wayne Ricketts stands accused of one count of bribery under the federal bribery statute, 18 U.S.C. § 201(a) and one count of mail fraud, 18 U.S.C. § 1343. The Government alleges that he agreed to receive a bribe to "fix" a "dirty" urine sample for a federal inmate residing at a halfway house. He now moves to dismiss the bribery count on the ground that he is not a "public official" as defined by 18 U.S.C. § 201(a).

### FACTS

Ricketts was formerly employed as house manager and senior house manager by Project Return Foundation Federal Community Treatment Center, doing business as "Chrysalis." Chrysalis is a "halfway house" residence that houses approximately 45 federal inmates at any given time. The existence of such residential community treatment centers is specifically authorized by 18 U.S.C. § 4082. Subdivision (b) of that section authorizes the Attorney General to designate any available, suitable and appropriate institution or facility, whether maintained by the federal government or otherwise, as a place of confinement for a person sentenced by a federal court. Subdivision (f) includes a

United States. Accordingly, the claim for prejudgment interest against the United States must be dismissed.

residential community treatment center, such as Chrysalis, in the definition of "facility."

Chrysalis operates under contract with the Bureau of Prisons. According to the Statement of Work [for] Contract Community Treatment Centers, which describes the duties and responsibilities of Chrysalis under this contract, Chrysalis is "responsible for ensuring control and accountability of residents ..." Chrysalis is also required to administer random urine tests to residents under procedures specified by the Bureau of Prisons. *See* Statement of Work, Ch. 5, §§ F(6)(a)–(e). If a resident does not pass a urine test, he is subject to disciplinary sanctions, including commitment to federal prison. *See Id* at § K.

As house manager and senior house manager at Chrysalis, defendant's responsibilities included performing or supervising all urinalysis testing of residents in compliance with the procedures set forth in the Statement of Work. He had been trained in urine testing under Bureau of Prison procedures. The money used to operate Chrysalis and to pay defendant's salary came directly from the Bureau of Prisons.

### DISCUSSION

Section 201(a) provides, in relevant part, that " 'public official' means ... an ... employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, ... in any official function, under or by authority of any such department, agency, or branch of Government."

In *Dixson v. United States*, (1983) 465 U.S. 482, 498, 104 S.Ct. 1172, 1180, 79 L.Ed.2d 458 the Supreme Court found that "employment by the United States or some other similarly formal contractual or agency bond is not a prerequisite to prosecution under the federal bribery statute." The Court then held that the executives of a private social service corporation which administered federal block grant funds that were provided to the city of Peoria, Illinois under the Housing and Community Development Act of 1979 were public officials for purposes of the federal bribery statute.

Here we need not go nearly as far as the Court in *Dixson*. We need only rely on the more modest proposition—stated above as an assumption—that a formal contractual bond with the Federal Government is sufficient to bring a defendant within the ambit of Section 201(a) as a "public official." Defendant Ricketts occupied a supervisory role in an organization that contracted with the Bureau of Prisons, pursuant to a federal statute, to house and supervise federal convicts. Part of his responsibility was to conduct and supervise urine testing. He knew that a "dirty" urine test could mean punishment and perhaps incarceration in a federal prison for a resident. Defendant's position is closely analogous to that of a prison guard, who is unquestionably a public official. The allegation that he accepted bribes to fix "dirty" urine for residents of Chrysalis is properly brought under the federal bribery statute.

Defendant's motion to dismiss Count 1 is therefore denied.

SO ORDERED.