**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Earl BUDD, Jr., a/k/a Earline,
Defendant–Appellee.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Earl BUDD, Jr., a/k/a Earline,
Defendant–Appellant.**

Nos. 93–3081, 93–3086.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 5, 1994.

Decided May 17, 1994.

William J. Garber, Fairfax, VA (appointed by the Court) argued the cause and filed the briefs for appellee/cross-appellant.

Robert T. Swanson, Asst. U.S. Atty., Washington, DC, argued the cause for appellant/cross-appellee. With him on the briefs were Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Roy W. McLeese, III and Lynn Leibovitz, Asst. U.S. Attys., Washington, DC.

Before WALD, EDWARDS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Appellee and cross-appellant Earl Budd was convicted after a jury trial of one count of distributing cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988), and two counts of using a communication facility to facilitate the distribution of a controlled substance, in violation of 21 U.S.C. § 843(b) (1988). The district court sentenced Budd to 78 months in prison. On appeal, the government challenges the sentence, arguing that 21 U.S.C. § 841(b)(1)(B) (1988) obligated the district court to impose a mandatory minimum sentence of ten years. Budd cross-appeals, contending that his conviction should be overturned because the evidence presented at trial established entrapment as a matter of law. Because there was sufficient evidence to support the jury's denial of the entrapment defense, we affirm the conviction. However, because we agree with the government that the district court erred by not applying the statutory mandatory ten-year minimum, we vacate Budd's sentence and remand for resentencing.

## I. BACKGROUND

In late 1990, the owners of two nightclubs located in the same building at 5th and K Streets, N.W. filed complaints with the D.C.

Metropolitan Police Department ("MPD") of significant drug distribution activity in and around the clubs. In response, the MPD began an investigation and assigned to Investigator Gregory Wilson the responsibility for infiltrating the network of drug dealers operating in and around one of the clubs, the Brass Rail, which caters to a gay clientele. The parties agree that on March 13, 1991, during the course of Wilson's long-term undercover investigation, he met Budd for the first time. Beyond that, however, the parties' versions of the facts diverge dramatically. According to the government, Wilson was only introduced to Budd by a government informant because another drug deal set up by the informant fell through. According to Budd, who took the stand in his own defense, the introduction was prompted by a friend who told him that Wilson found Budd "interesting." Trial Transcript ("Trial Tr.") IV at 35 (Aug. 7, 1992). Whereas Wilson testified that during the March 13th meeting, Budd sold him $300 worth of crack cocaine, told Wilson he could supply cocaine on a weekly basis provided that he was given one day's notice, and gave Wilson his home telephone number, Budd denied that any sale took place and claimed that he told Wilson that he only had access to small quantities of marijuana.

The government asserts that Wilson had no further contact with Budd until March 20, 1991, when Wilson called Budd at home to set up a second purchase of cocaine. Over the next two days, Wilson placed four recorded telephone calls to Budd and arranged to buy cocaine from Budd at his home on the evening of March 21st. During one of the four conversations, which were all played to the jury, Wilson told Budd that his voice "sounded real sexy," but Wilson testified that he only made this statement to ingratiate himself with Budd. See Trial Tr. II at 60–61 (Aug. 5, 1992). As to the evening of March 21st, Wilson testified that he went to Budd's home, purchased $350 worth of cocaine (6.59 grams), and left within five minutes. Investigator Wayne Stencil, who followed Wilson to Budd's house and waited in his own car outside, corroborated that the visit lasted no more than three minutes. While Budd admitted to meeting Wilson on the 21st, he

denied selling any cocaine. Instead, Budd stated that he and Wilson hugged and kissed when Wilson arrived but that Wilson "didn't seem to be really that interested" after Budd indicated that he could not provide Wilson with cocaine. See Trial Tr. IV at 51. According to Budd, Wilson allowed him to "roll a joint" which he laced with "a little bit" of cocaine supplied by Wilson. Id. at 51–52. Budd acknowledged that in March 1991 he was spending most of his paycheck on heavy smoking of marijuana laced with cocaine. Budd also claimed that Wilson called him repeatedly and came to his home on four or five other occasions; during each visit Wilson allegedly asked whether Budd could supply cocaine and then hugged and kissed Budd. Budd testified that although he and Wilson had sex on or about the evening of March 26th, Wilson did not talk about buying drugs that evening and never offered sex in exchange for cocaine. Wilson disagreed with Budd's rendition of the facts, maintaining that aside from March 21st, his only other meeting at Budd's home took place on April 11th, and that he left quickly because there was no drug sale. Budd was arrested on September 5, 1991. On August 10, 1992 the jury returned a verdict of guilty on the March 21st distribution charge and on the charges of using a telephone on March 20th and 21st to facilitate the distribution of cocaine. Because no verdict was returned on the March 13th distribution charge, the government subsequently moved to dismiss that charge. Budd challenges the verdict on the grounds that he was entrapped as a matter of law.

After a sentencing hearing on April 5, 1993, the district court imposed a sentence of 78 months, deciding that the ten-year mandatory minimum prescribed by 21 U.S.C. § 841(b)(1)(B) for repeat drug offenders did not apply because Budd's prior 1987 conviction in the Superior Court for the District of Columbia for attempted possession with intent to distribute phencyclidine ("PCP") was not a federal crime. See Memorandum Decision and Order at 5–6 (Apr. 5, 1993). The government appeals the district court's refusal to impose the ten-year minimum sentence.

## II. ANALYSIS

### A. *Entrapment*

■ On appeal, Budd claims that the evidence established entrapment as a matter of law. A successful entrapment defense has two parts; it requires a showing that a defendant was induced by the government to commit a crime for which he lacked any predisposition. *See Mathews v. United States,* 485 U.S. 58, 62–63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988). Once the defendant has met the burden of showing " 'that there is *some* evidence' " of government inducement, the burden shifts to the government to disprove entrapment by demonstrating beyond a reasonable doubt that the defendant was predisposed to commit the crime. *See United States v. Kelley,* 748 F.2d 691, 698 (D.C.Cir.1984) (quoting *United States v. Burkley,* 591 F.2d 903, 914 (D.C.Cir. 1978) (emphasis in original), *cert. denied,* 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979)); [1] *United States v. Jenrette,* 744 F.2d 817, 821–22 (D.C.Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985). In this circuit, the jury, and not the judge, determines whether the defendant has carried the burden of demonstrating that there is some evidence of inducement and, if so, whether the government has met its burden of proving predisposition.[2] *See United States v. Whoie,* 925 F.2d 1481, 1483 (D.C.Cir.1991). Our review of the jury's rejection of an entrapment defense is limited, allowing us to overturn the jury's verdict only if no reasonable jury could have found that the government proved beyond a reasonable doubt that the defendant was predisposed to commit the criminal act prior to first being approached by a government agent. *See Jenrette,* 744 F.2d at 822; *see also Jacobson v. United States,* —— U.S. ——, ——, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992).

■ We are convinced that the record reveals ample evidence to support a finding beyond a reasonable doubt that Budd was predisposed to commit the crimes of which he was convicted. Viewing the evidence in the light most favorable to the government, on March 13th Budd both told Wilson that he could supply him with cocaine if given a day's notice and gave Wilson his home telephone number.[3] Budd's ability to obtain $350

1. We note the apparent tension between this court's decision in *Burkley,* 591 F.2d at 914, where we specifically explained that "we do not think that the defendant should bear the burden of proving inducement by a preponderance of the evidence," and our more recent statement in *United States v. Whoie,* 925 F.2d 1481, 1483 (D.C.Cir.1991), that "the jury ... decides whether the defendant has carried his burden of proving inducement, not just producing evidence of it." We need not resolve that tension here, however, as the government prevails even under the standard of *Burkley,* which is more favorable to the defendant.

2. The district court instructed the jury on both inducement and predisposition, properly explaining that the entrapment defense is defeated if the evidence does not support a finding of government inducement. The district court then told the jury that if it found inducement, it must also determine whether Budd was "ready and willing" to commit the crime prior to the inducement. Trial Tr. IV at 245. Although the jury found Budd guilty and thereby rejected the entrapment defense, we cannot know whether the jury concluded that there was no government inducement and ended its inquiry, or whether the jury found some evidence of inducement but went on to determine that Budd was predisposed.

Budd implies that the combination of Wilson's initiation of contact with Budd and his repeated telephone calls, when taken in the context of their alleged sexual relationship, is sufficient to support a finding of inducement as a matter of law. The government responds by denying that Wilson's conduct "was such that a law-abiding citizen's will to obey the law could have been overborne," *United States v. Kelley,* 748 F.2d 691, 698 (D.C.Cir.1984); *see also Sorrells v. United States,* 287 U.S. 435, 442, 53 S.Ct. 210, 212–13, 77 L.Ed. 413 (1932), particularly because Budd admitted that Wilson did not offer him sex in exchange for receiving a supply of cocaine. While we doubt that there was sufficient evidence to support a finding of government inducement, *see United States v. Salmon,* 948 F.2d 776, 779 (D.C.Cir.1991), in the interest of addressing Budd's claim that the evidence failed to show any predisposition, we will assume *arguendo* that inducement existed for purposes of this appeal.

3. According to the reasoning of *United States v. Powell,* 469 U.S. 57, 61–63, 105 S.Ct. 471, 474–76, 83 L.Ed.2d 461 (1984), which held that a jury's acquittal of a defendant on a predicate offense does not inexorably lead to the conclusion that there is insufficient evidence to support a conviction for a compound offense which had the predicate offense as one of its elements, we are free to consider this evidence even though

worth of crack cocaine in a day (Wilson requested the drugs on March 20th and picked them up on March 21st) could easily have persuaded the jury that he was already tied in to the drug trade. Nor did Wilson have to pressure Budd to supply the cocaine—he readily accepted the opportunity. Indeed, if we credit the government's testimony, this case is the prototype of what the Supreme Court recently described as the "typical case ... [in which] the entrapment defense is of little use" because it is one in which an "agent deployed to stop the traffic in illegal drugs offer[ed] the opportunity to buy or sell drugs, and, [because] the offer [wa]s accepted, ma[de] an arrest." *Jacobson*, —— U.S. at ——, 112 S.Ct. at 1541. Moreover, Budd's own testimony supports a finding that he was predisposed prior to being approached by Wilson. He admitted that he agreed to supply Wilson with marijuana, and that he was heavily using drugs at the time of the alleged entrapment. Based on these facts, we conclude that a reasonable jury could have believed beyond a reasonable doubt that Budd had a "state of mind which readily respond[ed] to the opportunity furnished by the officer or his agent to commit the forbidden act[s]" with which he was charged. *United States v. Kelley*, 748 F.2d 691, 698–99 (D.C.Cir.1984) (quotations and citations omitted); *see also United States v. Russell*, 411

the jury acquitted Budd of the March 13th distribution charge.

4. We cannot agree with Budd that the government waived this argument by failing to raise it properly before the district court. When the government filed its information on Budd's prior convictions before trial, as required by 21 U.S.C. § 851(a) (1988), it alleged that Budd's prior conviction in D.C. Superior Court for attempted possession with intent to distribute PCP was a "felony controlled substance offense" which required that he receive the enhanced sentence mandated by § 841(b)(1)(B). The presentence report also informed the district court that Budd was subject to the ten-year mandatory minimum sentence of § 841(b)(1)(B). Although the parties' memoranda on the proper sentence to be imposed did not discuss § 841(b)(1)(B), the following colloquy at the sentencing hearing demonstrates that both the district court and appellee were aware of the government's position:

The Court: Does he get a mandatory minimum 10?

U.S. 423, 436, 93 S.Ct. 1637, 1645, 36 L.Ed.2d 366 (1973).

B. *Sentencing*

■ The government contends that, in light of Budd's prior conviction in D.C. Superior Court for attempted possession with intent to distribute PCP, the district court erred by refusing to impose the ten-year mandatory minimum prescribed for repeat drug offenders by 21 U.S.C. § 841(b)(1)(B) (1988).[4] Section 841(b)(1)(B) provides:

**(b) Penalties**

Except as otherwise provided ... any person who violates subsection (a) of this section [prohibiting distribution of controlled substances] shall be sentenced as follows: (1) ... (B) in the case of a violation of subsection (a) involving ... (iii) 5 grams or more of a mixture ... which contains cocaine base.... If any person commits such a violation after one or more prior convictions for an offense punishable under this paragraph, *or for a felony under any other provision of this subchapter ... or other law of a State, the United States, or a foreign country relating to narcotic drugs ...* have become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years.

Defense Counsel: They filed an information of previous convictions.
The Court: Yes.
Defense Counsel: And so but we certainly do not think this a 30 year offense based upon—
The Court: I understand the 30 year. Now, but I don't understand your—is your argument—is the same argument on the [prior] drug [conviction]? See, that's the thing that gives him the 10 years.

Sentencing Tr. at 10–11 (Apr. 5, 1993). Finally, the district court's Sentencing Memorandum explicitly acknowledged that the government was seeking the ten-year mandatory minimum and specifically explained its reasons for refusing to impose this minimum. *See* Memorandum and Order at 5–6 (Apr. 5, 1993). Thus we cannot find that the government failed to preserve its § 841(b)(1)(B) claim for consideration on appeal. *Cf. United States v. Dockery*, 965 F.2d 1112, 1117 (D.C.Cir.1992) (no waiver even where government never expressly informed district court that ten-year statutory minimum applied).

21 U.S.C. § 841(b)(1)(B) (1988) (emphasis added). The district court determined that this provision did not apply to Budd because the court could "find no federal crime of an attempt to possess with the intent to distribute narcotics [and thus] Budd's conduct did not rise to the level of a federal crime." Memorandum and Opinion at 6 (Apr. 5, 1993). We disagree. First, 21 U.S.C. § 846 (1988) criminalizes any attempt to possess with intent to distribute a controlled substance, and PCP is a controlled substance. *See* 21 U.S.C. §§ 802(6) & 812(c) (1988). Second, and more important, an examination of the plain and expansive language of § 841(b)(1)(B) leads to the ineluctable conclusion that the provision applies to felony drug convictions under D.C. law. We have previously noted that violations of the District of Columbia Code and of the United States Code are both "crimes against a single sovereign, namely, the United States." *Goode v. Markley*, 603 F.2d 973, 976 (D.C.Cir.1979), *cert. denied*, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980); *see also* D.C.Code § 23–101 (with few exceptions crimes prosecuted under D.C.Code are maintained in name of United States); *cf. United States v. Mills*, 964 F.2d 1186, 1190 (D.C.Cir.) (en banc) (distinguishing between a federal criminal offense and a D.C. criminal offense that parallels a federal one), *cert. denied*, —— U.S. ——, 113 S.Ct. 471, 121 L.Ed.2d 378 (1992). Moreover, Congress amended § 841(b)(1)(B) in 1984 to extend the ten-year mandatory minimum to prior state and foreign drug convictions, *see* S.Rep. No. 225, 98th Cong., 1st Sess. 258–59 (1983), and, in the absence of any compelling legislative history, it would be absurd for us to find that in so doing Congress intended to create a unique exemption for prior D.C. drug convictions.

 Finally, although the government inexplicably neglects to discuss the issue in its briefs, attempted possession with intent to distribute PCP is a prior "felony" conviction. According to 21 U.S.C. § 802(13), the term "felony", as used in the subchapter in which § 841 appears, "means any Federal or State offense classified by applicable Federal or State law as a felony." 21 U.S.C. § 802(13) (1988). While we can find no applicable definition of "felony" in the D.C.Code, under the U.S.Code's sentencing provisions, all felonies (regardless of their classification) are characterized as offenses punishable by imprisonment for a term exceeding one year, *see* 18 U.S.C. § 3559(a) (1988), and the offense of attempted possession with intent to distribute PCP is punishable by a prison term of up to thirty years. *See* D.C.Code §§ 33–541(a), 33–549 (Michie 1992). Thus we conclude that Budd's prior PCP conviction in D.C. Superior Court constitutes a felony requiring the imposition of the ten-year minimum mandated by § 841(b)(1)(B).[5] *Cf. United States v. Clark*, 956 F.2d 1176 (D.C.Cir.1992) (approving imposition of mandatory minimum sentence under § 841(b)(1)(B) where defendant's prior state conviction qualified as a felony under New York law). Contrary to Budd's urging, absent a constitutional violation, the district court may not depart downward from the ten-year statutory minimum on the ground that the underlying facts demonstrate that the PCP conviction overstates the seriousness of that offense. *Cf. United States v. Dockery*, 965 F.2d 1112, 1116–17

---

5. We cannot accept Budd's argument that an examination of the underlying facts of the PCP offense indicates that the crime did not rise to the level of a felony within the meaning of § 841(b)(1)(B). Budd's attempt to draw an analogy between this case and those in which we have held that the district court has discretion to examine the facts and circumstances of a crime when determining whether the crime qualifies under the Sentencing Guidelines as either a "non-violent offense" or a "crime of violence" must fail because the definition of a "felony" in the Sentencing Guidelines allows for no such leeway. *Compare* U.S.S.G. § 2K1.3 cmt. (n. 4) (1993) (felony offense means any offense punishable by imprisonment for more than one year) *and* U.S.S.G. § 4A1.2(O) (same) *and* U.S.S.G.

§ 4B1.2 cmt. (n. 3) (same) *with United States v. Chatman*, 986 F.2d 1446, 1450 (D.C.Cir.1993) (district court has broad discretion under U.S.S.G. § 5K2.13 to examine all facts and circumstances of offense to determine whether offense was nonviolent); *United States v. Bradshaw*, 935 F.2d 295, 303 (D.C.Cir.1991) (district courts have discretion in applying the career offender provisions of Guidelines to determine that particular prior offense was not in fact crime of violence even if in general the offense was violent) (citing *United States v. Baskin*, 886 F.2d 383, 389–90 (D.C.Cir.1989), *cert. denied*, 494 U.S. 1089, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1990)). Attempted possession with intent to distribute PCP is a felony, regardless of the circumstances surrounding the offense.

(D.C.Cir.1992) (misuse of prosecutorial authority of less than constitutional dimension does not justify departure from congressionally mandated minimum sentence).

### III. CONCLUSION

For the foregoing reasons, we affirm the conviction but vacate Budd's sentence and remand for resentencing consistent with this opinion.

*So ordered.*