**UNITED STATES of America, Appellee,**

v.

**Michael A. NEVILLE, Appellant.**

**No. 94–3095.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 28, 1996.

Decided May 3, 1996.

Mark J. Rochon, Washington, DC, argued the cause and filed the briefs, for appellant.

Mary B. McCord, Assistant United States Attorney, argued the cause, for appellee. With her on the brief were Eric H. Holder, Jr., United States Attorney, John R. Fisher, Roy W. McLeese, III and Randall D. Eliason, Assistant United States Attorneys.

Before SILBERMAN, RANDOLPH, and TATEL, Circuit Judges.

Opinion for the court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Michael Neville, a corrections officer at the District of Columbia jail, appeals his convictions for accepting a bribe and possessing cocaine in violation of federal law. Although he raises three issues on appeal, only one requires full discussion—his argument that we should reverse his bribery conviction because he was not a "public official" as defined by 18 U.S.C. § 201(a)(1). Concluding that corrections officers employed by the District of Columbia are public officials within the meaning of that statute, and finding meritless Neville's arguments that he was entrapped and that the district court violated Federal Rule of Evidence 403 in admitting testimony that he previously dealt drugs, we affirm both convictions.

### I.

In the autumn of 1992, the FBI and the Metropolitan Police conducted a joint undercover operation aimed at D.C. jail guards who were smuggling illegal drugs to inmates. Known as "Operation Inside Track," it worked as follows. Relying primarily on tips from inmates, the FBI targeted a corrections officer, instructing an inmate to ask the officer for help getting drugs. If the officer agreed, the inmate gave the officer a pager number, supposedly of a friend on the outside who would supply drugs to the officer. The "friend," of course, was an undercover agent who arranged a meeting to deliver drugs to the corrections officer, leading to the officer's arrest.

Based on information that Michael Neville, a corrections officer at the jail, was once part of a large-scale cocaine operation in Miami and Washington, D.C., the FBI targeted him as part of Operation Inside Track. One day after being approached by an inmate, Neville paged the undercover police officer posing as a Miami drug dealer. In a subsequent telephone conversation, Neville agreed to bring a pair of sneakers and a small package of cocaine to the inmate in exchange for $300, explaining that he "was trying to go back to what [he] was doing.... [Y]ou know, we

worked together before, me and your people." Within a week, the undercover officer met with Neville, giving him the money, cocaine and sneakers. Because Neville used the cocaine himself, the drugs never reached the inmate.

A federal grand jury indicted Neville for possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and for accepting a bribe in violation of 18 U.S.C. § 201(b)(2)(A) & (C). The latter makes it a crime for "a public official ... [to] corruptly ... receive[ ] ... anything of value personally ... in return for: (A) being influenced in the performance of any official act ... or (C) being induced to do or omit to do any act in violation of the official duty of such official or person." At trial, the Government presented audiotapes of Neville's conversations with the undercover officer, along with testimony of two convicted drug dealers who described Neville's role as a dealer in a cocaine operation lasting from the mid–1980s through June 1992. Testifying on his own behalf, Neville raised entrapment as a defense. The jury convicted Neville of violating the bribery statute and of simple possession of cocaine.

### II.

Neville's principal challenge to his bribery conviction is that he is not a "public official" as defined in 18 U.S.C. § 201(a)(1). Section 201(a)(1) provides that

the term 'public official' means Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror.

18 U.S.C. § 201(a)(1) (1994). Relying primarily on *Krichman v. United States*, 256 U.S. 363, 41 S.Ct. 514, 65 L.Ed. 992 (1921), and *Dixson v. United States*, 465 U.S. 482, 104 S.Ct. 1172, 79 L.Ed.2d 458 (1984), Neville contends that employees of the District of Columbia do not automatically qualify as public officials. According to Neville, to fall within the scope of the federal bribery statutes, District employees must exercise dis-

cretion over government policy or spending. He claims that, as a correctional officer at the D.C. jail who merely followed regulations and orders, he did not meet that criterion. Reviewing the issue *de novo, see United States v. Madeoy,* 912 F.2d 1486, 1494 (D.C.Cir.1990), *cert. denied,* 498 U.S. 1105, 111 S.Ct. 1008, 112 L.Ed.2d 1091 (1991), we reject Neville's interpretation of the statute.

■ Far from a model of clarity, section 201(a)(1) has two possible readings. Under one interpretation, "public official" includes every "employee ... of the United States, or any department, agency or branch of Government thereof, including the District of Columbia," without further qualification. The additional terms in the sentence—"in any official function" and "under or by authority of any such department, agency, or branch of Government"—would apply only to "person[s] acting for or on behalf of the United States." Alternatively, we could read section 201(a)(1) as grouping "officer[s]" of, "employee[s]" of, and "person[s] acting for or on behalf of" the government into one category, requiring each of them to act "in any official function" and "under [the] authority of" the government in order to qualify as a public official. Since either approach is grammatically plausible, if inelegant, we need other tools of statutory construction to ascertain the meaning of the statute.

The first interpretation finds support in the statute's legislative history. Prior to 1962, when Congress passed the current version of section 201(a)(1), federal bribery statutes contained nine separate sections applicable to different categories of individuals (Members of Congress, judges, jurors, officers of the federal government, and so forth), each section describing the prohibited conduct differently and imposing different penalties. *See* S.Rep. No. 2213, 87th Cong., 2d Sess. 7–8 (1962); H.R.Rep. No. 748, 87th Cong., 1st Sess. 6–7, 17–19 (1961). To rationalize federal bribery law, Congress reorganized the statutes in 1962: section 201(a)(1) defined as "public official[s]" all those individuals subject to the statute, while section 201(b)–(i) imposed uniform standards of conduct and penalties for violating those standards. *See* S.Rep. No. 2213 at 7–8;

H.R.Rep. No. 748 at 17–19. The relevant committee reports suggest that Congress intended "public official" to include *all* federal and D.C. officers and employees without further qualification, and to create a separate category of public officials consisting of other persons who act "for or on behalf of" the government "in an[ ] official capacity" "under [the] authority" of the government. As the House Judiciary Committee explained when it first reported the proposed legislation:

> "Public official" is given a comprehensive definition, covering *all* Government officers and employees.... The phrase— "person acting for or on behalf of the United States, or any department, agency, or branch of Government thereof, in any official function, under or by authority of any such department, agency, or branch of Government"—is used ... to include within the statutory coverage those persons who perform activities for the Government, as, for example, through a contractual arrangement.

H.R.Rep. No. 748 at 17–18 (emphasis added). The Senate Judiciary Committee, which added "District of Columbia" to the list of government entities, likewise stated: "The term 'public official' is broadly defined to include officers and employees of the three branches of government, jurors, and other persons carrying on activities for or on behalf of the Government." S.Rep. No. 2213 at 7–8. Applying the bribery statute to all D.C. government employees is also consistent with Congress' intention that "public official" be interpreted broadly. *See Dixson,* 465 U.S. at 494, 104 S.Ct. at 1178–79 (citing S.Rep. No. 2213 at 4 and H.R.Rep. No. 748 at 17).

Not only is interpreting "public official" broadly consistent with the statute's legislative history, it also makes sense. Certain individuals, including jurors and Members of Congress, as well as officers and employees of the federal government and the District of Columbia, would qualify as public officials by virtue of their position alone. In contrast, persons inherently owing no duty to the federal or District governments as a result of their positions would qualify as public officials under the federal statute only if they

acted for the federal or District governments in a duly authorized, official function.

The alternative interpretation—requiring federal and District government employees to act in an "official function" and "under or by authority of" the government to qualify as public officials—also finds support in the legislative history. Some evidence suggests that, prior to 1962, the bribery statutes did not apply to all federal employees, but only to those acting in an "official function" or "official capacity," and that Congress did not intend to change that requirement when it revised the laws in 1962.

From 1909 to 1948, federal statutes made it a crime to offer a bribe "to [1] any *officer* of the United States, or to [2] any *person* acting for or on behalf of the United States in any *official* function, under or by the authority of any department or office of the Government thereof." Act of Mar. 4, 1909, ch. 321, § 39, 35 Stat. 1088, 1096 (codified at 18 U.S.C. § 91 (1946)) (emphasis added). It was likewise a crime for "[1] an officer of the United States, or [2] a person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or office of the Government thereof" to *accept* a bribe. *Id.* § 117, 35 Stat. at 1109–10 (codified at 18 U.S.C. § 207 (1946)). In *Krichman*, 256 U.S. at 366–67, 41 S.Ct. at 515–16, and *United States v. Levine*, 129 F.2d 745, 747 (2d Cir.1942), courts interpreted these bribery statutes as not applying to all federal employees, but to only those acting in an "official" function.

When Congress recodified federal criminal statutes in 1948, it modified these two provisions, adding the word "employee." As a result, the statutes prohibited offering a bribe "to any officer *or employee* or person acting for or on behalf of the United States, or any department or agency thereof, in any official function, under or by authority of any such department or agency," while also prohibiting "an officer *or employee of*, or person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or agency thereof" from accepting a bribe. Act of June 25, 1948, ch. 645, §§ 201–02, 62 Stat. 683, 691 (codified at 18 U.S.C. §§ 201–02 (1952)) (em-

phases added). Although the 1948 revisers discussed other changes they made to these provisions, they did not mention adding the word "employee" or state that they were rejecting either *Krichman* or *Levine*. See H.R.REP. No. 304, 80th Cong., 1st Sess. A–14 to A–15 (1947) (discussing substitution of "department or agency" for "department or office of the Government thereof" to indicate that officers and persons acting on behalf of *independent* agencies or Government-owned corporations were covered by the statute); *Dixson*, 465 U.S. at 492 n. 9, 104 S.Ct. at 1177–78 n. 9. This silence suggests that Congress did not intend to expand the bribery statute in 1948 to cover all government employees. *See CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1145–46 (D.C.Cir.1987), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988) (stating that courts "must not attribute to the 1948 enactment any substantial disruption in prior congressional purpose or policy without first discerning clear evidence that such a departure was intended").

When Congress next reorganized the bribery laws in 1962, it was well aware of previous bribery statutes and court interpretations of those statutes. *Dixson*, 465 U.S. at 492–95, 104 S.Ct. at 1177–79. Despite the drafters' statements that they intended the 1962 bribery statute to apply broadly, they also indicated that the Act "made 'no significant changes of substance'" in the previous bribery laws. *Id.* at 494, 104 S.Ct. at 1179 (quoting S.REP. No. 2213 at 4). Indeed, the 1962 House report cited *Levine*. H.R.REP. No. 748 at 18. At one point, it stated that "'[p]ublic official' is broadly defined to mean Member of Congress, any officer or employee *of* or person acting for or on behalf *of* the United States in an official function." H.R.REP. No. 748 at 15 (emphasis added). Contrary to other statements in the Senate and House reports, the structure of this sentence indicates that Congress intended "official function" to modify the terms "officer" and "employee," as well as "person acting for or on behalf of the government."

We need not choose between the two readings, because under either Neville is a public official. If the first reading is correct, and every District of Columbia employee is a

public official, Neville plainly qualifies because the evidence established that he was employed by the District government.

■ If the second reading is correct, and only employees in "an[ ] official function" qualify, we must consider whether Neville performs an "official function" for the District of Columbia government. Without venturing a comprehensive definition of "official function," we have no doubt that Neville performs such a role. Protecting the public from incarcerated criminals is a quintessentially sovereign function, carrying with it a significant measure of public trust, which the Supreme Court unanimously recognizes as the touchstone for determining whether an individual is a public official. *Dixson*, 465 U.S. at 496, 104 S.Ct. at 1179–80 (majority opinion); *id.* at 502, 104 S.Ct. at 1183 (O'Connor, J., dissenting) ("[T]he purpose of the statute was undoubtedly to proscribe bribery of *all those* who carry out a federal trust." (emphasis added)).

We find nothing in the case law supporting Neville's argument that, to be covered by the Act, a District government employee must make policy or spending decisions. Neville relies upon *Krichman v. United States*, where the Supreme Court considered whether a baggage porter, who worked for a railroad that the federal government had seized as an emergency measure during World War I, violated the 1909 statute making it a crime for "any officer" or "any person acting for or on behalf of the United States in any official function" to accept a bribe. 256 U.S. at 364 n. 1, 41 S.Ct. at 515 n. 1 (quoting Act of Mar. 4, 1909, ch. 321, § 39, 35 Stat. at 1096). Finding that the porter was "[c]learly ... not an officer of the United States," the Court addressed whether the porter was "acting for the United States *in an official function.*" *Id.* at 365, 41 S.Ct. at 515 (emphasis added). The Court pointed out that Congress had failed to extend the 1909 bribery act to "every employee of the Government," but limited it to "those, not officers, who are performing duties of an *official* character" or "acting in *official* functions." *Id.* at 366, 41 S.Ct. at 515 (emphases added). To give meaning to the term "official function," and in light of the rule of lenity, the Court

found that the law could not reach so far as to include " 'window cleaners, scrubwomen, elevator boys, doorkeepers, pages' " or baggage porters. *Id.* at 366–68, 41 S.Ct. at 515–16 (quoting *Krichman v. United States*, 263 F. 538, 544 (2d Cir.1920) (Ward, J., dissenting)).

Neville's job was different. He was a permanent, rather than emergency, government employee; he performed a traditionally governmental, not proprietary, function; and most important, as a corrections officer he occupied a position involving a far greater degree of public responsibility than a baggage porter.

Nor does *Dixson* support Neville's argument. In *Dixson*, the Supreme Court addressed whether officers of a private, non-profit organization who administered and expended federal block grants were public officials. 465 U.S. at 484, 104 S.Ct. at 1173–74. The Court observed in dictum that not "all employees of local organizations responsible for administering federal grant programs are public officials within the meaning of § 201(a)," stating that they "must possess some degree of official responsibility for carrying out a federal program or policy." *Id.* at 499, 104 S.Ct. at 1181. Because the Court made this observation in connection with the threshold that private sector employees, not government employees, must meet to qualify as holding positions of public trust, the requirement of "official responsibility for carrying out a federal program or policy" has no bearing on this case. The other cases relied upon by Neville are likewise distinguishable. *See Madeoy*, 912 F.2d at 1494 (finding a private appraiser had "official federal responsibilities" because the government guaranteed loans based on his recommendations); *United States v. Hollingshead*, 672 F.2d 751, 754 (9th Cir.1982) (finding that private sector employee of federal reserve bank who "recommend[ed] the expenditure of federal funds" was a public official).

If anything, the case law confirms our view that Neville is a public official. Neither the Supreme Court nor this court has suggested that government employees must exercise discretion in order to qualify as public officials. *See Dixson*, 465 U.S. at 498, 104 S.Ct.

at 1180–81 (noting that employment by the United States is not a "prerequisite" to being a public official, but never suggesting employment is insufficient to be a public official); *Madeoy,* 912 F.2d at 1494 (same). Moreover, other courts have specifically assumed that federally employed prison guards are public officials. *United States v. Velazquez,* 847 F.2d 140, 141–42 (4th Cir.1988) (holding that a local deputy sheriff at jail operating under contract with federal government to house federal employees was a public official because he was "acting as [a] federal jailer"); *United States v. Ricketts,* 651 F.Supp. 283, 284 (S.D.N.Y.1987), *aff'd* 838 F.2d 1204 (2d Cir.1987) (observing that a federal prison guard is "unquestionably a public official").

In sum, whether public officials under section 201(a) include *all* employees of the District of Columbia government, or only those who act in an "official function," we hold that Neville, as a corrections officer employed by the District of Columbia government, was a public official subject to conviction for bribery under section 201(b).

### III.

Neville argues that we should reverse his convictions because he was entrapped and because the district court improperly admitted testimony by two convicted drug dealers under Rule 403 of the Federal Rules of Evidence.

■ To prove entrapment, the defendant bears the initial burden of showing some evidence that the Government induced him to commit the crime. If the defendant meets that burden, the Government must then prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *E.g., United States v. Budd,* 23 F.3d 442, 445 (D.C.Cir.1994), *cert. denied,* —— U.S. ——, ——, 115 S.Ct. 910–11, 130 L.Ed.2d 792 (1995). Here, the trial court allowed the jury to consider both the inducement and predisposition issues, and we do not know whether the jury rejected the entrapment defense because it found a lack of government inducement or because it concluded that Neville was predisposed. In similar situations, we have focussed on the predisposition issue,

noting that we must uphold the jury's verdict if, viewing the evidence in the light most favorable to the Government, a reasonable jury could have found that the Government proved beyond a reasonable doubt that the defendant was predisposed to commit the crime. *See Budd,* 23 F.3d at 445 & n. 2; *United States v. Jenrette,* 744 F.2d 817, 822 & n. 7 (D.C.Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985).

■ Based on the alacrity and active interest with which Neville embraced the plan to smuggle drugs into the prison, a reasonable jury could have found him predisposed to commit the crimes. *See Jenrette,* 744 F.2d at 822. An FBI agent testified that Neville called the supposed Miami drug dealer just one day after the informant approached Neville. Moreover, the Government taped Neville saying that he "was trying to go back to what he was doing," which suggested that Neville was interested in using the transaction to reestablish himself as a drug dealer.

■ We likewise find no error in the district court's admitting the testimony of two convicted drug dealers who, pursuant to arrangements with the Government that could have led to a reduced sentence for at least one of them, testified that Neville had, from the mid–1980s through mid–1992, dealt cocaine on the streets of Washington, D.C. The district court allowed the jury to consider this evidence in connection with the defendant's motive—in particular, to explain his statement that he "wanted to go back to what he was doing"—and his predisposition to commit the crimes for which he was charged. Courts may admit extrinsic prior bad acts evidence for these purposes, subject to Rule 403's requirement that the danger of unfair prejudice not substantially outweigh its probative value. *United States v. Burkley,* 591 F.2d 903, 919 (D.C.Cir.1978), *cert. denied,* 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979). We reverse district court decisions to admit evidence under Rule 403 only for "a grave abuse of discretion." *United States v. Mitchell,* 49 F.3d 769, 776 (D.C.Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 327, 133 L.Ed.2d 228 (1995).

In our view, the evidence had substantial probative value. Testimony that Neville frequently accepted money in exchange for distributing cocaine outside the jail clearly relates to Neville's motive and his willingness to accept money to distribute cocaine inside the jail—even when that testimony is by convicted drug dealers, one of whom stands to gain from cooperating with the Government. Moreover, the court limited the danger that the jury would misuse this evidence by giving a strict limiting instruction, stating that the jury "absolutely may not use that evidence for any other purpose," including holding "it against Mr. Neville's character" or "infer[ring] that Mr. Neville has a general tendency to commit criminal offenses." The court thus did not abuse its discretion.

We therefore affirm Neville's convictions.

*So ordered.*