**UNITED STATES of America,**
**Appellee,**

v.

**Pernell J. SUMLIN, Appellant.**

**No. 00–3056.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 9, 2001.

Decided Nov. 9, 2001.

Appeal from the United States District Court for the District of Columbia (No. 99cr00164–01).

Robert S. Becker, appointed by the court, argued the cause and filed the brief for appellant.

Elana Tyrangiel, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Kenneth L. Wainstein, U.S. Attorney at the time the brief was filed, John R. Fisher, Roy W. McLeese III and John Crabb Jr., Assistant U.S. Attorneys.

Before: SENTELLE, RANDOLPH and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Pernell Sumlin was convicted after a jury trial of one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine base

in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(ii); unlawful distribution of 5 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1)(B)(iii); and, unlawful distribution of 500 grams or more of cocaine and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii) and 18 U.S.C. § 2. Sumlin appeals, arguing that the Government impermissibly introduced evidence relating to his "prior bad acts" and improperly bolstered the credibility of its paid informant. Sumlin also argues that his convictions should be overturned because the evidence presented at trial established entrapment as a matter of law. Finding no merit to Sumlin's arguments, we affirm his convictions.

## I. Facts

The parties agree that appellant Sumlin and Kevin Goode first met in the spring of 1998 when they both worked in the same downtown D.C. office building. Goode, having pleaded guilty to a drug offense in 1997, was cooperating with the DEA on various drug investigations. Beyond that, the parties' versions of the events leading to Sumlin's arrest differ somewhat. According to the government, Sumlin told Goode in mid–1998 that he was involved in the drug trade and that he had a drug connection in Indiana, one "Mike Turio," who supplied him with cocaine. Also according to the government, Sumlin told Goode that he had "purchased a kilo" of cocaine, and had mentioned his drug source to Goode on at least two subsequent occasions.

In the spring of 1999, with the assistance of Goode, the DEA began investigating Sumlin and his purported connection in Indiana. In late March or early April of that year, the DEA directed Goode to contact Sumlin. Goode did so, and on April 2, 1999, Goode and Sumlin made arrangements for Sumlin to sell 62 grams of cocaine to Goode. That night, Sumlin, Goode, and undercover law enforcement officer Percel Alston (posing as Goode's cousin) met in a Maryland restaurant to complete the transaction. At the time of the meeting, however, Sumlin indicated that the cocaine had not yet been converted into crack and that he needed to meet with his "source." Sumlin left the restaurant and did not return. However, in a conversation with Goode the following day, the two made arrangements to complete the transaction. Thus, on April 6, 1999, Sumlin sold 62 grams of crack cocaine to Goode and Alston for $2100. During this drug sale, Sumlin discussed "Mike" and his own travel to Indiana. After the sale was completed, Sumlin told Alston and Goode that he had an additional kilogram of cocaine to sell and that Goode and Alston should contact him if they needed any additional cocaine. Goode and appellant subsequently arranged a deal for Sumlin to sell five kilograms of cocaine for $125,000. Sumlin asked an acquaintance, Daniel Clayton, to supply the cocaine for the upcoming sale. Clayton provided four kilograms of cocaine to Sumlin, who then met with Goode on April 15, 1999. After giving the cocaine to Goode, Sumlin was arrested.

Prior to trial and over Sumlin's objection, the court ruled that the government could introduce, under Federal Rule of Evidence 404(b), evidence that Sumlin pleaded guilty to drug trafficking in 1989, and had engaged in uncharged drug transactions in 1998. This latter evidence, according to the government's proffer, would include testimony from Clayton that he and Sumlin had engaged in prior cocaine transactions together in amounts ranging from nine ounces to a kilogram, as well as evidence from Goode regarding Sumlin's statements that he was involved in drug trafficking. The government also intro-

duced at trial—without objection—statements from Sumlin regarding his experience as a drug dealer; testimony from Goode elaborating and interpreting Sumlin's statements regarding his Indiana contact, Mike; and, testimony from DEA Agent Michael Dukovich regarding the DEA's investigation into a possible drug source in Indiana. The government also introduced, again without objection, testimony from DEA Agent Albert Perry regarding Goode's record for assisting the DEA in other drug investigations.

Sumlin testified in his own defense that he was an unwilling participant in the drug sales and that Goode called him between 40 and 50 times before he agreed to participate in the transactions at all. Sumlin also testified that he only learned of Clayton and Clayton's drug connections through a friend, that he lied to Goode and Alston about his drug connections during the April 6 drug deal, and that he acted like a drug dealer for "safety reasons." Sumlin further testified that he was unfamiliar with the drug jargon used by Goode and Alston, and produced a witness (his wife) who testified that he lacked the overt signs of participation in the drug trade such as expensive cars and clothing. Finally, Sumlin testified that he made up the story of "Mike," his alleged drug source.

On appeal, Sumlin challenges his convictions on grounds the trial court erred in allowing testimony from Goode and Agent Dukovich regarding "Mike" and the DEA's investigation into an Indiana drug source, as well as testimony from Agent Perry regarding Goode's record for assisting the DEA. Sumlin also argues that he was entrapped, as no reasonable jury could have concluded that he was predisposed to commit the crimes for which he was convicted. We address, and dismiss, each of his arguments in turn.

## II. Analysis

### A. Rule 404(b) Evidence

 Prior to trial, the government filed notice of its intent to present, under Fed.R.Evid. 404(b), "other crimes evidence." *See* Government's Notice of Intent to Introduce Other Crimes Evidence Pursuant to Federal Rule of Evidence 404(b), *United States v. Sumlin*, Cr. No. 99–164 (RWR) (D.D.C. Jan. 5, 2000). "Other crimes evidence" is admissible under Rule 404(b) if it is relevant, probative of a material issue other than the defendant's character, and more probative than prejudicial. *See United States v. Mathis*, 216 F.3d 18, 26 (D.C.Cir.2000); *see also United States v. Bowie*, 232 F.3d 923, 930 (D.C.Cir.2000). In addition, such evidence is admissible only if all of the evidence at trial is "sufficient to support a jury finding that the defendant committed the other crime or act." *Bowie*, 232 F.3d at 930 (citing *Huddleston v. United States*, 485 U.S. 681, 689–90, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)).

The Government intended to introduce evidence of Sumlin's past guilty plea to drug distribution in 1989, and his uncharged participation in drug trafficking during 1998. At a hearing before the district court, the Government proffered the testimony of Clayton, who would testify about his direct participation with Sumlin in past drug transactions, and Kevin Goode, who would testify about comments Sumlin made indicating his involvement in the drug trade. Over Sumlin's objection, the district court ruled in favor of allowing the testimony, subject to Sumlin renewing his objection at trial. At trial, the government introduced its proffered evidence, but Sumlin did not renew his objection.

Sumlin now argues that the district court abused its discretion and committed prejudicial error in admitting certain "oth-

er crimes evidence" through the testimony of Goode and DEA Agent Mike Dukovich. Specifically, Sumlin argues that in granting the Government's motion to introduce testimony under Fed.R.Evid. 404(b), the district court ruled only that the Government could introduce evidence concerning 1) Sumlin's guilty plea to crack cocaine distribution in 1989, and 2) evidence that Sumlin received and sold crack cocaine in 1998. Sumlin asserts that the district court wrongly allowed testimony from Goode concerning Sumlin's alleged association with "Mike Turio," and testimony from Agent Dukovich concerning an open investigation in Indiana as to a possible source of drugs. Because the Government's proffer at the hearing made no mention of "Mike Turio" or of Sumlin's alleged connection to Indiana, Sumlin argues that it was error for the district court to admit this evidence at trial. Sumlin contends that it was this particular evidence that caused a jury to conclude that he was engaged in drug trafficking. Therefore, he claims he was prejudiced by its admission.

The Government, however, argues that although Sumlin objected to its proffered evidence at the hearing before the district court, he did *not* object to its introduction at trial. Accordingly, the proper standard of review is one of plain error, not abuse of discretion. The Government continues that *even if* it was error for the district court to admit the testimony, Sumlin did not suffer any prejudice from the admission of the testimony because additional, unobjected-to evidence was admitted such that a jury could have concluded that he participated in drug trafficking.

 We agree with the Government that *even if* it was error for the district court to admit the challenged testimony, Sumlin is not entitled to remedial action. We note that our analysis remains un-

changed whether we apply the more lenient abuse of discretion standard, as suggested by Sumlin, or the less forgiving plain error standard, as suggested by the Government. This is so because both standards require a finding that the district court's error affected the defendant's substantial rights. *See* Fed.R.Crim.P. 52; *see also United States v. Olano*, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Thus even assuming error, Şumlin has nonetheless failed to establish that the admission of both Goode's and Agent Dukovich's testimony "affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734, 113 S.Ct. 1770.

First, Sumlin does not contest the district court's decision to allow Clayton's statements regarding Sumlin's experiences as a drug dealer. He concedes that these statements are admissible under Federal Rule of Evidence 801(d)(2) as party admissions. This unchallenged evidence includes Clayton's testimony that Sumlin said he was involved in the drug trade, that he "was receiving about a 'ki'[logram] a week to a week and a-half," and that he had a "connection through Indiana" for receiving drugs. Moreover, Goode's unchallenged testimony includes Sumlin's admissions that he had a drug supplier in Indiana named Mike Turio. Yet Sumlin argues that it was Goode's unsupported explanation of his relationship with Mike Turio at trial that caused the jury to find that he was involved in drug trafficking. This challenged evidence, however, pales in comparison to Sumlin's own damaging admissions regarding his past involvement in drug trafficking. Any error in admitting Goode's testimony was harmless.

Second, Sumlin challenges Agent Dukovich's testimony concerning an open investigation into an Indiana drug source. Specifically, Sumlin argues that because the DEA never established a connection be-

tween Sumlin and Indiana or Mike Turio, it was error for the district court to admit Agent Dukovich's testimony concerning the DEA's investigative efforts in Indiana. Error results, Sumlin argues, because "[o]nly with the addition of [Agent] Dukovich's testimony that a person in Ft. Wayne [Indiana] was under DEA investigation did the allegations become sufficient for a jury to conclude" that Sumlin was involved in a drug trafficking conspiracy. This argument lacks merit. Whether Sumlin received drugs from Indiana or India makes no difference. The unchallenged evidence easily established that Sumlin and Clayton received and distributed drugs in 1998. From where or from whom is of little consequence. Moreover, defense counsel succeeded at trial in showing that the DEA never confirmed a relationship between Sumlin and Mike Turio. Again, even assuming it was error to admit Agent Dukovich's testimony concerning the DEA's investigation in Indiana, Sumlin did not suffer prejudice. Because Sumlin has not established prejudice, he is not entitled to relief.

## B. Bolstering

Sumlin next asserts that the district court erred by admitting DEA Agent Perry's testimony regarding Goode's cooperation with the DEA in previous drug investigations. Sumlin argues that this evidence was irrelevant, improper "bolstering" more prejudicial than probative, and should not have been admitted.[1] We disagree.

■ Here Sumlin and the Government agree that the district court's decision to admit Agent Perry's testimony is

reviewed for plain error because Sumlin did not object to its introduction at trial. Fed.R.Crim.P. 52(b); *United States v. Spriggs*, 102 F.3d 1245, 1257 (D.C.Cir. 1996). As used in Rule 52(b), " '[p]lain' is synonymous with 'clear' or, equivalently, 'obvious.' " *Olano*, 507 U.S. at 734, 113 S.Ct. 1770. In determining whether an error is "plain," we recognize that "[a]t a minimum, [a] court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Id.* The plain error must also affect "substantial rights." *Id.* Usually, an error affecting substantial rights is one that is prejudicial, or, in other words, one that "affected the outcome of the district court proceedings." *Id.* A decision to correct such an error, however, remains within our "sound discretion," which "should not [be] exercise[d] . . . unless the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 732, 113 S.Ct. 1770 (internal quotations omitted). Under this standard of review, the district court's decision to admit testimony concerning Goode's prior cooperation with the DEA was not error, plain or otherwise, and certainly did not affect the outcome of the district court proceedings.

■ Sumlin's first challenge to Agent Perry's testimony is that it was irrelevant under Fed.R.Evid. 401. This challenge need not detain us long. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. In *United States v. Smith*, 232 F.3d 236

---

1. Although Fed.R.Evid. 608(b) explicitly deals with "bolstering" appellant expressly is not relying on that rule, on the theory that the evidence in this case is not "extrinsic" within the meaning of the rule. Without regard to

whether Sumlin's understanding of the meaning of the rule is correct, we have analyzed the record in the terms of relevance and prejudice asserted by him in his brief.

(D.C.Cir.2000), we dismissed a relevance challenge under similar circumstances on grounds that the fact a paid informant "has informed and testified truthfully in the past under his plea agreement certainly bears on his response to similar pressures and temptations in the present." *Id.* at 241. Finding no reason to depart from our reasoning in *Smith,* we reject Sumlin's claim that Perry's testimony was irrelevant.

▆▆▆ We interpret Sumlin's next challenge as one of improper "bolstering" under Rule 608(b). Rule 608(b) states that

> [s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Fed.R.Evid. 608(b). The testimony to which Sumlin now objects includes statements from Agent Perry that Goode had assisted the DEA in other investigations that resulted in numerous arrests. This testimony, however, followed Sumlin's efforts to impeach Goode's credibility by questioning the arrangements of his plea agreement with the DEA. Certainly, revealing a witness' bias is an acceptable method of attacking a witness' credibility. *See United States v. Abel,* 469 U.S. 45, 50–52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Equally acceptable, though, may be testimony that tends to *rebut* bias. In *Smith,* we recognized that our sister circuits did

not agree on "the point at which impermissible 'bolstering' ends and permissible use of past cooperation to rebut bias begins." 232 F.3d at 242. We did, however, identify the threshold question under Rule 608(b) as: "For what purpose has the prosecution offered the extrinsic evidence?" *Id.* If offered only to bolster an informant's credibility, the extrinsic evidence is barred by Rule 608(b). *See United States v. Taylor,* 900 F.2d 779, 781 (4th Cir.1990). If offered for an alternate and legitimate reason, "such as 'to justify a cooperation agreement [or] rebut allegations of bias,' the evidence falls outside Rule 608(b)'s narrow confines." *Smith,* 232 F.3d at 242 (quoting *United States v. Lochmondy,* 890 F.2d 817, 821 (6th Cir.1989)).

▆▆ In the present case, we do not know for what purpose the Government introduced Agent Perry's testimony. As in *Smith,* defense counsel failed to object to the testimony at trial, thus preventing the prosecution from justifying or explaining its purpose for introducing the testimony. Perhaps the Government offered the evidence to rebut allegations of bias; perhaps not. Under the plain error standard, with the *possibility* that the Government introduced Agent Perry's testimony to rebut allegations of bias, and the "ambiguity in the case law" that results from the "hazy" line between permissible and impermissible uses of "bolstering," we cannot find that the district court's admission of Agent Perry's testimony, if error at all, was obvious, or that it affected substantial rights of the defendant. *See Smith,* 232 F.3d at 243.

▆▆ Even if it was error to introduce Agent Perry's testimony, the ultimate outcome remains unchanged. Under the plain error standard, Sumlin must show that the introduction of Agent Perry's testimony was error that "affected the outcome of the district court proceedings."

*Olano*, 507 U.S. at 734, 113 S.Ct. 1770. In considering this standard, we are mindful that a court should invoke the plain error exception "sparingly" to remedy only "particularly egregious errors" that adversely affect the "fairness, integrity or public reputation of judicial proceedings." *Smith*, 232 F.3d at 243 (internal quotations omitted). With the great weight of the evidence against Sumlin before us, in particular his own damaging admissions, we fail to see how the introduction of Agent Perry's testimony could have affected the outcome of Sumlin's trial. Because Sumlin did not suffer prejudice as a result of Agent Perry's testimony, his challenge must fail.

 Sumlin next argues that Agent Perry's testimony, even if admissible, should have been rejected under Federal Rule of Evidence 403. This rule states that,

> [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403. Sumlin argues that Agent Perry's testimony was unduly prejudicial and should therefore have been excluded. This challenge also need not detain us long because we again review for plain error. When faced with this question before, we noted that "[i]t is difficult to imagine a Rule 403 challenge that could meet [the plain error] standard, for Rule 403 contemplates the thoughtful consideration of the trial court and leaves the admission of evidence to the sound discretion of the trial judge." *United States v. Boney*, 977 F.2d 624, 631 (D.C.Cir.1992). The facts of this case do not stretch our imagination to the extremes contemplated by the *Boney* court. Instead, the facts

here are quite similar to those in *Smith*. The Government's evidence tended to demonstrate that Goode had cooperated with the Government in the past, and to rebut Sumlin's allegations that Goode was biased. Its probative value, then, was high. The prejudice complained of, however, is unclear. Even without Agent Perry's testimony, the evidence against Sumlin was sufficient to support his convictions. Therefore, based on our decision in *Smith*, our recognized deference to a trial court's Rule 403 determinations, and our agreement with the Third Circuit that "[i]f judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal," we find that the district court's admission of Perry's testimony was not plainly more prejudicial than probative. *Boney*, 977 F.2d at 631 (quoting *United States v. Long*, 574 F.2d 761, 767 (3d Cir. 1978)).

### C. Entrapment

 Sumlin's final argument is that the evidence presented at trial established entrapment as a matter of law. We disagree. A successful entrapment defense requires two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). Thus, a defendant must first show that he was induced by the government to commit a crime that he would not have otherwise committed. *See id.* at 62–63, 108 S.Ct. 883. A defendant will succeed at this step if he "comes forward with *some evidence* of government" inducement. *United States v. Burkley*, 591 F.2d 903, 913 (D.C.Cir.1978) (emphasis added). If successful at this stage, then the burden shifts to the government "to disprove entrapment by demonstrating beyond a reasonable doubt that

the defendant was predisposed to commit the crime." *United States v. Budd,* 23 F.3d 442, 445 (D.C.Cir.1994); *see also United States v. Neville,* 82 F.3d 1101, 1107 (D.C.Cir.1996).

Under this approach, "the jury, and not the judge, determines whether the defendant has carried the burden of demonstrating that there is some evidence of inducement and, if so, whether the government has met its burden of proving predisposition." *Budd,* 23 F.3d at 445; *see also United States v. Whoie,* 925 F.2d 1481, 1483 (D.C.Cir.1991). In this case, the jury considered testimony on both inducement and predisposition. Given that the jury found Sumlin guilty, we cannot know whether the jury based its verdict on a finding that Sumlin was not induced, or, if he was, that he was nonetheless predisposed to commit the crime. We therefore "focus[ ] on the predisposition issue" and uphold the jury's verdict if, viewing the evidence in a light most favorable to the Government, "a reasonable jury could have found that the Government proved beyond a reasonable doubt that the defendant was predisposed to commit the crime." *Neville,* 82 F.3d at 1107.

Recognizing that predisposition is "the principal element in the defense of entrapment," *United States v. Russell,* 411 U.S. 423, 433, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), we focus "upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Mathews,* 485 U.S. at 63, 108 S.Ct. 883. The Government must therefore prove a "state of mind which readily responds to the opportunity furnished by the officer or his agent to commit the forbidden act." *Burkley,* 591 F.2d at 916 (internal quotations omitted). In evaluating a defendant's predisposition, we look to all of the events sur-rounding the ultimate commission of the crime. *See United States v. Kelly,* 748 F.2d 691, 699 (D.C.Cir.1984).

Viewing the evidence in a light most favorable to the Government, we find sufficient evidence to support a jury's finding that Sumlin was predisposed to commit the crimes for which he was convicted. For example, the jury considered evidence that Sumlin had pled guilty to selling crack cocaine. The jury also considered evidence that showed Sumlin engaged in at least four, and as many as seven, prior drug transactions with Clayton during 1998. Moreover, Sumlin's own admissions show "he had been dabbling a little in the [drug trafficking] game," that "he was receiving about a 'ki[logram]' a week to a week and a-half," and that "he had a connection through Indiana." The jury also heard evidence that Sumlin told Goode and Alston during the April 6 drug sale that he could supply them with whatever amount of drugs they needed. During this same drug sale, Sumlin told Goode and Alston that he had a "whole brick," or kilogram, of additional cocaine to sell. We find this evidence more than sufficient for a reasonable jury to find beyond a reasonable doubt that Sumlin was predisposed to sell cocaine.

Sumlin's assertions that he was "reluctant," unfamiliar with drug jargon, and lacked overt signs of participation in the drug trade fail to convince us that the jury's verdict was unreasonable. At best, Sumlin was an unwary criminal. *See Mathews,* 485 U.S. at 63, 108 S.Ct. 883. Unwariness, however, does not preclude predisposition. We conclude, as did a reasonable jury, that the Government proved beyond a reasonable doubt that Sumlin was predisposed to commit the crimes for which he was charged and convicted.

### III. Conclusion

For the foregoing reasons, appellant's convictions in the district court are affirmed.